EAGER *v.* JONESBORO, LAKE CITY & EASTERN EXPRESS COMPANY

Opinion delivered February 5, 1912.

1. FISH AND GAME—POWER OF STATE.—It is within the police power of the State, subject to constitutional limitations, to enact such general and special laws as may be regarded as reasonably necessary for the preservation and protection of its game and fish, and to regulate the taking thereof.    (Page 293.)

2. CARRIER—LIABILITY FOR SHIPMENT OF GAME.—A carrier is not liable for game shipped in an interstate shipment and seized by a game warden of another State where the shipment was not marked and designated in accordance with the requirements of the act of Congress of May 25, 1900, 31 Stat. L. 187.    (Page 294.)

3. CONTRACTS—ILLEGALITY.—Any act which is forbidden, either by the common or statutory law—whether it is *malum in se* or merely *malum prohibitum*, whether indictable or merely subject to a penalty—can not be the foundation of a valid contract; nor can anything auxiliary to or promotive of such act.    (Page 297.)

Appeal from Mississippi Circuit Court, Chickasawba District; *Frank Smith*, Judge; affirmed.

### STATEMENT BY THE COURT.

This suit was brought by appellant to recover the value of nine barrels of wild ducks, delivered to it for shipment from Manila, Arkansas, on November 19, 1909, to Chicago, Illinois. Appellee admitted receiving the ducks for shipment and alleged that they were delivered to it at Manila, Arkansas, in violation of the laws of the State of Arkansas, Missouri, Illinois and the United States, and that while said ducks were in the city of St. Louis, *en route* to Chicago, they were seized by the game warden of the State of Missouri and destroyed. That said ducks were delivered to appellee at Manila, Arkansas, in violation of the laws of the State of Arkansas and Missouri and by reason of appellant shipping them into the State of Missouri in violation of the statutes of that State and the statutes of the United States, while they were in the city of St. Louis, in the possession of the Pacific Express Company, the game warden of that State seized and confiscated the shipment.

The testimony shows that the ducks were delivered to the railroad company, packed in sugar and coffee barrels; that holes were cut in the sides and bored in the bottoms of the barrels and the tops were covered over with tow sacks; that a tag was placed upon the barrel, containing the name of the consignor and consignee and the charges for shipment paid; that they did not become the property of the consignee until delivered. Each barrel contained six dozen ducks, valued at from $4.50 to $6.00 per dozen. That all the ducks were killed in Big Lake, in Hector Township, Mississippi County, Arkansas, and consigned to parties in Chicago, Illinois; that they were unloaded at St. Louis, in transit, into the warehouse of the express company, awaiting a train to Chicago; that, while in said warehouse, the deputy game wardens of the State of Missouri seized the shipment without writ or process of any kind, and that in making the seizure they did so under the laws of the State of Missouri; that the tag taken from one barrel of the shipment read, "A. Stallwood & Co., Chicago. From J. B. Kilmer, Manila, Arkansas."

There was nothing on the face of each tags to indicate who the shippers were, but on the reverse side of each tag was the name of the shipper. The seizures were made without

any warrants, and because the game warden presumed the ducks had been shipped in violation of the game laws of Missouri, and turned over to the different charitable institutions, in accordance with such laws.

The plaintiff requested the court to make certain findings of facts and declarations of law, which it refused to do, and made the following finding of facts and declaration of law:

"1.  The court finds the facts to be that the wild ducks here sued for were delivered to the defendant as a common carrier, and that they were not delivered at their destination by defendant's connecting carrier, but that the ducks were taken from the possession and custody of defendant's connecting carrier by the game warden of the State of Missouri.

"2.  The court finds that the shipment in question was an interstate shipment, and that the ducks were packed in barrels covered with gunny sacks, and that there were holes in the barrels, but the court finds that the holes in said barrels were not put there in compliance with the provisions of the Lacey Act, and the court further finds that the said barrels containing the wild ducks were not plainly and clearly marked so that the nature of the contents of said barrels could be readily ascertained on an inspection of the outside of such barrels.  The court finds that the entire contents of the barrels could not be known from the holes bored in the barrel, or the covering of the sack, and that there was nothing about the packages to indicate the contents of the barrel except as stated, and that this was not in compliance with the requirements of the Lacey Act."

### DECLARATION OF LAW.

"1.  The court therefore declares the law to be that the shipment in question was made in violation of the Federal statutes, and, it being an unlawful one, no recovery can be had in this suit because of the failure of defendant's connecting carried to deliver the ducks to the consignee."

Judgment was rendered against appellant, from which he appealed.

*J. F. Gautney,* for appellant.

1.  The game warden of Missouri, having no warrant or other legal process, had no authority to seize an inter-

state shipment, and such seizure does not excuse the carrier for nondelivery. 104 Mass. 166; 117 Mass. 593; 55 Me. 62; 13 L. R. A. 33.

Proof of delivery to the carrier for shipment and of failure to deliver to the consignee is *prima facie* evidence of negligence. 10 L. Ed. 115.

From the moment of delivery to the carrier for shipment beyond the State it became an interstate shipment, not subject to the police powers of Missouri. 31 L. Ed. 700; 34 L. Ed. 128.

2. If it be admitted that the shipment was not made in compliance with the Lacey Act of Congress, that does not relieve appellant of liability. That act does not authorize the game warden of the State to which the game is not shipped to seize and destroy the same. U. S. Stat. L. 188, § § 3, 4, 5; 115 Fed. 423.

*E. F. Brown,* for appellee.

1. The seizure of the shipment by the State game and fish commissioner of the State of Missouri, acting under authority of the Missouri game and fish law, à constitutional and valid statute of that State, was lawful and proper; and the carrier is not liable for the loss of the shipment occurring through any such act or mandate of public authority. 95 U. S. 485, 24 L. Ed. 547, 548; 12 How. (U. S.) 299, 319, 13 L. Ed. 996, 1005; 9 Wheat. (U. S.) 1, 9-10; 5 How. 504, 624, 12 L. Ed. 256, 310; 7 How. 283, 559-61, 12 L. Ed. 702, 818; 113 U. S. 205, 28 L. Ed. 959, 961; 107 U. S. 691, 704, 27 L. Ed. 584, 588; 12 Otto. 691, 26 L. Ed. 238, 240; 3 Wall. (U. S.) 713, 18 L. Ed. 96, 100; 13 Wall. 236, 20 L. Ed. 624, 626; 154 U. S. 204, 38 L. Ed. 962, 965; 21 Wall. 558, 22 L. Ed. 224; 162 U. S. 650, 40 L. Ed. 1105, 1106; 17 Wall. 569, 21 L. Ed. 710; 95 U. S. 459, 462, 24 L. Ed. 525, 526; 6 Wall. 35, 18 L. Ed. 745, 746; 118 U. S. 557, 30 L. Ed. 244, 254; 15 Wall. 204, 21 L. Ed. 164; 177 U. S. 514, 44 L. Ed. 868; 211 U. S. 612, 53 L. Ed. 352; 118 U. S. 455, 30 L. Ed. 237; 121 U. S. 444, 30 L. Ed. 976; 122 U. S. 326; 30 L. Ed. 1200; 128 U. S. 1, 32 L. Ed. 346; 129 U. S. 141; 32 L. Ed. 637; 114 U. S. 196, 29 L. Ed. 257, 260; 50 Fed. 16; 116 U. S. 446, 29 L. Ed. 691, 694; 92 U. S. 259, 272, 23 L. Ed. 543.

2. If it be admitted that the Missouri game and fish law is unconstitutional, and that therefore the seizure of the shipments of ducks was unlawful, yet the carrier should be excused for failure to deliver the ducks to the consignee, if his failure so to do was through no fault or lack of care and diligence on his part.

The act of God or the public enemy does not constitute the only exception to the carrier's liability as an insurer. A carrier is excused for nondelivery also when the loss occurs through the violence of a mob, or the inherent nature of the goods, or the contributory negligence of the shipper, or the seizure by court process under writs of attachment or garnishment, or through confiscation under police regulations. The principle running through all these exceptions is that a common carrier shall not ,be held liable when, though exercising the highest degree of care, it could not possibly have avoided the loss. 74 Mo. 351, 4 Am. & Eng. R. Cas. 210; 35 Barb. 188.

3. Appellant can not recover because the shipments were made contrary to section 4 of the Lacey Act, and were therefore unlawful. Act March 4, 1909, c. 321, § § 243, 244, 35 Stat. 1137, 1138. See act May 25, 1900, c. 553, sec. 4 Comp. St. 1901, p. 3181; 168 Fed. 524; 22 L. R. A. (N. S.) 862, 869; 47 Ark. 378, 383; 32 Ark. 619, 631; 9 Cyc. 479; 25 Am. Rep. 671; 5 Ark. 648; 13 Ark. 12; 25 Ark. 209; 29 Ark. 386; 40 Ark. 251; 66 Ark. 535; 67 Ark. 480; 81 Ark. 41, 48; 85 Ark. 106; 143 Mo. 238, 40 L. R. A. 151.

KIRBY J., (after stating the facts.) The testimony is undisputed that the ducks were killed in certain townships in Mississippi County, Arkansas, where it was lawful to sell and transport them beyond the limits of the State, under the act of June 1, 1909; and the court found that they were packed in barrels and not plainly and clearly marked, so that the contents could be readily ascertained, and not packed and shipped in accordance with the requirements of the Lacey Act; that they were not delivered at their destination by defendant's connecting carrier because of being taken from its custody and possession and confiscated by the game warden of the State of Missouri; and declared the law to be that the shipment in question was made in violation

of the Federal statutes, and, being an unlawful one, no recovery could be had in the suit because of the failure of the connecting carrier to deliver the ducks to the consignee.

The State of Missouri has stringent laws for the protection of its game and fish, and prohibits the sale of any animal, whether taken within or without the State, or lawfully or unlawfully taken, fixing a penalty for the violation thereof. It makes it the duty of the game and fish commissioner to enforce all laws and to prosecute the violators thereof. He may make complaints and cause proceedings to be commenced for violations of the law without bond for cost, and "said game and fish commissioner shall at any and all times seize any and all birds, animals and fish which have been caught, taken or killed at a time, in a manner or for a purpose, or had in possession, or which had been shipped, contrary to the laws of the State. The unlawful use of any articles contrary to the provisions of the game and fish law shall forfeit the same·to the State, and, upon their being found by the law under any of the conditions prohibited by this act, shall be destroyed." It makes it the duty of all owners of warehouses, cold storage plants, and common carriers, their agents, servants and employees, to permit the game and fish commisioner to examine any package in their possession "which the said game and fish commisioner shall suspect or have reason to believe contains fish, birds or game, protected by the laws of the State, and not entitled under such to be transported or had in possession, or when the said game and fish commissioner shall suspect, or have reason to believe, that the said package is falsely labeled.    *    *    * Said game and fish commissioner shall not be liable for damages on account of any search, examination or seizure made in accordance with the provisions of this act."

It is no longer questioned that it is within the police power of the State, subject to constitutional limitations, to enact such general and special laws as may be regarded reasonably necessary for the preservation and protection of its game and fish and to regulate the taking thereof. *Haggerty* v. *St. Louis Ice Mfg. Co.,* 143 Mo. 238, 40 L. R. A. 251, 44 S. W. 1114; *Organ* v. *State,* 56 Ark. 267; *State* v. *Mallory,* 73 Ark. 236; *New York* v. *Hesterberg,* 211 U. S. 31. It may

also be said to be well established that the State has the same power over fish and game brought within its borders as it has over such game and fish found within its limits. *New York* v. *Hesterberg, supra*; In re *Deininger,* 108 Fed. 623; Ex parte *Maier,* 103 Cal. 476; *Merritt* v. *People,* 169 Ill. 218; *Stevens* v. *State,* 43 Atlantic 929; *People* v. *O'Neil,* 110 Mich. 324; *State* v. *Shattuck,* 104 N. W. 719; *People* v. *Martin,* 107 N. Y. Supp. 1076; *Roth* v. *State,* 51 Ohio St. 209, 37 N. E. 259; *People* v. *Hesterberg,* 184 N. Y. 126, afterwards affirmed by the Supreme Court of the United States.

In addition, such authority is also recognized by the Federal statute, known as the Lacey Act, providing for the regulation of the transportation of game in interstate commerce, as follows:

"Sec. 5. That all dead bodies, or parts thereof, of any foreign game animals, or game or song birds, the importation of which is prohibited, or the dead bodies or parts thereof, of any wild game animals, or game or song birds, transported into any State or Territory, or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such State or Territory, be subject to the operation and effect of the laws of such State or Territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such animals or birds had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise. This act shall not prevent the importation, transportation or sale of birds or bird plumage manufactured from the feathers of barnyard fowl." Acts May 25, 1900, c. 553, 31 Stat. L. 187; 3 Fed. Stat. Ann. 152.

It is contended by appellant that the game shipped was lawfully killed, under laws that permitted it to be shipped without the State, and that appellant, having received it for shipment to the point of destination, Chicago, Illinois, and failed to deliver it there in accordance with its contract, was bound to him for payment of its value. If the shipment had been of any ordinary personal property, or article of commerce, the contention would unquestionably be correct. The failure to deliver was sufficient evidence of negligence; and if the carrier was excused from its common law contract

duty by any of the recognized exceptions thereto, the burden devolved upon it to show such fact.

It is contended further that the ducks had been lawfully delivered to appellee by appellant for transportation beyond the limits of the State to Chicago, Illinois, and that it thereby became an interstate shipment, subject only to the regulations provided by Congress, and that a showing by the appellee that the shipment was taken from its possession under claim of authority by the game warden of the State of Missouri would not excuse its failure to deliver the shipment, nor relieve it of liability for failure to do so.   But the court found that it was an interstate shipment, that the ducks were not packed, and the barrels containing them marked nor attempted to be in compliance with the provisions of the Federal statute, regulating such shipments, and that, having been so made in violation of such statute, the plaintiff was not entitled to recover because of the failure to deliver it at its destination.

Unqestionably, said act makes it unlawful for a person to deliver to any common carrier for transportation; and for any common carrier to transport, from one State or Territory to another State or Territory, the bodies or parts thereof of any wild animals or birds that have been killed in violation of the laws of the State or Territory where they were killed, but permits the transportation of dead birds or animals killed during the open season when they may be lawfully taken and the export of which is not prohibited by the laws of the State or Territory or district where they are killed.   But it requires that all packages containing said birds or animals, the ones permitted to be shipped  of course  in interstate commerce, shall be marked and designated in a certain way that the contents of the package may be readily ascertained on inspection of the outside, and provides a fine of two hundred dollars for each violation by the shipper and the consignee knowingly receiving such article shipped and the  carrier transporting  same.

It is apparent from this law that the Congress recognized, not only the power of the States to preserve and protect their game and fish, but the extreme difficulty of the successful exercise of such power, and provided, as it could do,

reasonable regulations for the shipment of such game as was not unlawfully killed and was permitted to be exported from the State in which it was captured to another State, and whether this was done with a view to facilitate the shipment of such game, or to assist the different States in the enforcement of their game laws by requiring such shipments to be so made, labeled and marked, that the nature of the contents thereof may be readily ascertained from a casual inspection of the outside of the package so that the officer enforcing the local measures will not be troubled to examine such shipments to ascertain if they are but subterfuges to evade the game laws of the locality where discovered, can make no difference. This law is a valid one, and its requirements are plain, and were found to have been violated by the shipper in this instance. It can make no difference to him that the carrier also violated the law in receiving the shipment that was not made in accordance with its requirements, for such fact does not relieve him.

If the shipment had been taken from the custody of the carrier under the forms of law, there is no doubt but that it would have been relieved of liability for failure to deliver same in accordance with the terms of its contract.

In *Baltimore & Ohio R. Co.* v. *O'Donnell,* 49 Ohio State, 489, it is said:

"It is not claimed the liability of the defendant was limited by special contract. Its obligation was therefore that imposed by the rules of the common law, which makes it an insurer of the goods against all losses, except those arising from the act of God, or the public enemies, or from the conduct of the shipper, or the inherent nature of the goods, or, as is held in some cases, from the act or mandate of public authority. With respect to the last exception stated above, the rule seems to be now established that a common carrier is not liable if the goods be taken from his possession by legal process against the owner, or if, without his fault, they become obnoxious to the requirements of the police power of the State, and are injured or destroyed by its authority; as where they are infected with contagious disease, or are intoxicating liquors, intended for use or sale in violation of the laws of the State, which require their seizure and des-

struction.  *  *  *  The principle of the exception, it is said, in *Wells* v. *Steamship Company, supra,* is that the carrier is not obliged to violate the law of the jurisdiction to comply with its contract.  In *Atkinson* v. *Ritchie,* 10 East 534, it is held that the contract of a common carrier is always subject to the implied condition that he may lawfully comply with its terms; and, if its performance subsequently becomes unlawful without his fault, he is not required to violate the law of the jurisdiction to complete his undertaking."  See also 6 Cyc. 462; Hutchinson on Carriers, (3 ed.) § § 324-5; Elliott on Railroads, § 1416; *St. Louis S. W. Ry. Co.* v. *Gans,* 69 Ark. 252; *Thomas* v. *Northern Pacific Express Co.,* 73 Minn. 185, 75 N. W. 720; *Adams* v. *Scott,* 104 Mass. 164.

It may be that the game warden of Missouri in the seizure and confiscation of this shipment was acting within the power given him by the statutes of that State for the protection of its game and fish, although, if he acted beyond his authority and not in accordance with it, as alleged, he would ordinarily be regarded as but a trespasser, and his actions would not excuse the company from liability to perform its contract.  But it is conceded that the shipment was confiscated by the game warden of the State of Missouri under claim of authority for such act from the laws of that State, enacted in the exercise of its police powers to protect and preserve the game of the State; and if it was rightfully done, it excuses the failure of the performance of the contract of shipment because thereof; but, without regard to whether it was rightfully or wrongfully done, we do not think the appellant can recover in this case.  His right to do so is based upon a contract in violation of a plain statute, and, as already stated, the fact that the carrier was equally guilty of a violation of the statute in the making of the contract will not assist him, under the doctrine of the ancient maxim, *In pari delicto potior est conditio defendentis.*

In *Martin* v. *Hodges,* 47 Ark. 378, the court said: "It is a well settled doctrine that 'every contract made for or about any matter or thing which is prohibited and made unlawful by statute is a void contract, though the statute does not mention that it shall be so, but only inflicts a penalty on the

offender; because a penalty implies a prohibition, though there are no prohibitory words in the statute.'"

In *Lindsey* v. *Rottaken*, 32 Ark. 619, 631, it is said:

"Any act which is forbidden, either by the common or the statutory law—whether it is *malum in se*, or merely *malum prohibitum*; indictable or only subject to a penalty or forfeiture; or however otherwise prohibited by a statute or the common law—can not be the foundation of a valid contract; nor can anything auxiliary to or promotive of such act." See also 9 Cyc. 479; *Wood* v. *Stewart*, 81 Ark. 41; *Cobb* v. *Scoggin*, 85 Ark. 106.

Appellant bases his right to recover upon the claim that the ducks shipped were interstate commerce, and that it was not within the power of the game warden of the State of Missouri to confiscate them; but, as already said, such property is not regarded as articles of interstate commerce in the full sense, as other property moving in such commerce; and, in order to have had the protection he claimed himself entitled to in the shipment of this property in such commerce, he should have complied with the plain requirements of the act permitting it. Not having done so, and the property being found by the game warden of said State in a warehouse with other property there stored for delivery within that State and not being marked and designated as required by the said Lacey Act for its shipment in interstate commerce, it was confiscated.

Himself having in the beginning violated the law under which he claims protection, he can not complain of the negligence or default of the other party to the contract under the circumstances; the parties being in equal wrong, the condition of the defendant is the better, and the judgment is affirmed.

Mr. Justice WOOD concurs in the judgment.