## UNITED STATES v. SELKIRK.

### (District Court, S. D. Texas, at Galveston. July 14, 1919.)

1. TREATIES ⊂⇒2—SUBJECT—MIGRATORY BIRDS.

Regulation of the taking of migratory birds which pass between the United States and Canada is a matter for treaty, power to make which is by Const. art. 2, § 2, cl. 2, granted to the United States, and by article 1, § 10, cl. 1, denied to the several states.

2. GAME ⊂⇒4—REGULATION—GIVING EFFECT TO TREATIES.

The treaty of August 16, 1916, with Great Britain for the protection of migratory birds (39 Stat. 1702), being within power of United States to make, Act July 3, 1918 (Comp. St. 1918, § 8837a, appendix), enacted to give effect to that treaty, is also within its power.

Prosecution by the United States of William Selkirk for violation of the Migratory Bird Act of 1918. On demurrer to indictment. Demurrer overruled.

Maco & Minor Stewart, of Houston, Tex. (Albert De Lange, of Galveston, Tex., of counsel), for defendant.

D. E. Simmons, U. S. Dist. Atty., and E. P. Phelps, Asst. U. S. Dist. Atty., both of Houston, Tex.

HUTCHESON, District Judge. [1, 2] In this cause the defendant, by demurrer to an information filed by the United States attorney, seeks to have declared unconstitutional the Migratory Bird Act of July 3, 1918 (40 Stat. 755, c. 128 [U. S. Comp. St. 1918, § 8837a, appendix]), entitled "An act to give effect to the convention between the United States and Great Britain for the protection of migratory birds, concluded at Washington, August 16, 1916, and for other purposes" (the treaty referred to will be found in 39 Stat. 1702). While the demurrers present various forms of attack on the law, the gist of the contention is that, as the matter of the regulation of wild game is lodged in and a part of the sovereign power of the states and has not been delegated to the central government by the Constitution, the Congress is without power to legislate on the subject, and that the mere fact that the act is passed to give effect to a convention between the United States and Great Britain will not furnish Congress the power which without the treaty it clearly did not have, as I have no doubt that the cases in the federal and state courts holding the Migratory Bird Act of March 4, 1913 (37 Stat. 847, c. 145 [Comp. St. § 8837]), invalid, were correctly decided.

I cannot, however, assent to the view of counsel that the present act is likewise invalid.

"The constitutional provisions relating to the treaty power are: Article 2, § 2, cl. 2, which, among the powers granted to the President, provides that: 'He shall have power, by and with the * * * consent of the Senate, to make treaties, provided two-thirds of the Senators present concur.'

"Article 1, § 10, cl. 1, provides that: 'No state shall enter into any treaty, alliance, or confederation.'

"The Tenth Amendment to the Constitution provides: 'The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively or to the people.'

The Constitution (article 6, cl. 2) provides:

"This Constitution and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land."

It could not be for a moment contended that two sovereign states could not by treaty regulate the taking of migratory birds which pass from the one country to the other, and with the state of Texas still a sovereign republic, instead of a constituent part of the United States, there is no doubt that it could have concluded a treaty with Great Britain and enforced it, of the tenor and effect of that concluded by Congress.

What a state itself could do, that all the states can do through their agent, the central government, and it only remains to determine whether that government has been made the agent, or mouthpiece, of the states in the matter of treaties.

Even the most casual examination of the constitutional provisions above set out establishes: First, that the states have completely divested themselves of the power to enter into treaties; second, that without limitation or restriction they have conferred upon the President, with the consent of the Senate, the power to make treaties; and, third, that treaties made under the authority of the United States are the supreme law of the land, along with the Constitution and acts of Congress passed under the authority thereof.

While many decisions might be quoted and much learned discussion be indulged in, no more satisfactory expression of the situation of these United States and the several states composing it, in respect to treaty power exists, to my mind, than those expressions of Mr. Calhoun, while the commercial treaty with Great Britain was being discussed in the House of Representatives on January 8, 1816, when he said:

"This country within is divided into two distinct sovereignties. Exact enumeration here is necessary to prevent the most dangerous consequences. The enumeration of legislative powers in the Constitution has relation, then, not to the treaty-making power, but to the powers of the states. In our relation to the rest of the world, the case is reversed. Here the states disappear. Divided within, we present, without, the exterior of undivided sovereignty. The wisdom of the Constitution appears conspicuous. When enumeration was needed, there we find the powers enumerated and exactly defined; when not, we do not find what would be vain and pernicious to attempt. Whatever, then, concerns our foreign relations, whatever requires the consent of another nation—belongs to the treaty power—can only be regulated by it; and it is competent to regulate all such subjects, provided (and here are its true limits) such regulations are not inconsistent with the Constitution. If so, they are void. No treaty can alter the fabric of our government; nor can it do that which the Constitution has expressly forbidden to be done; nor can it do that differently which is directed to be done in a given mode, and all other modes prohibited. 4 Elliott's Debates, p. 464."

With this view of the treaty-making power of our country I unqualifiedly concur, and, so concurring, have no hesitancy in declaring that the demurrers in this case are not well founded, and that they should be and are hereby overruled.

I understand that Judge Trieber, of the Eastern District of Arkansas (United States v. Thompson, 258 Fed. 257) and Judge Van Valkenburgh of the Western District of Missouri (United States v. Samples, 258 Fed. 479) have taken the same view.

An order will be prepared and entered in accordance with the above.