**BOGLE v. WHITE, United States Marshal, et al.**

No. 6749.

Circuit Court of Appeals, Fifth Circuit.

Dec. 8, 1932.

Leonard Brown, of San Antonio, Tex., for appellant.

John D. Hartman, U. S. Atty., of San Antonio, Tex., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

To answer an indictment returned against him in the Western district of Tennessee, appellant was arrested in, and ordered removed from, the Western district of Texas. The writ of habeas corpus sued out by appellant was, after hearing, discharged. This appeal, purporting to be from the order of removal as well as from the order discharging the writ, followed. Though the removal order is not appealable (Sawyer v. U. S. [C. C. A.] 297 F. 222), the case is properly here on the appeal from the order discharging the writ.

At the hearing, the indictment was offered in evidence together with the warrant of arrest and the commitment issued on the indictment, and it was admitted that appellant was the person named therein. In fourteen counts the indictment charged the defendant with the unlawful shipment of birds, quail, and partridges captured or transported in a state contrary to its laws. It is appellant's claim that the indictment did not charge the commission of a crime.

Appellant concedes that the removing court receives the indictment, "not as a pleading, but as evidence establishing or tending to establish the commission of an offense," Fetters v. U. S., 283 U. S. 638, 51 S. Ct. 596, 598, 75 L. Ed. 1321, and that, if it charges a crime, it may not be scrutinized for insufficiencies, Lefkowitz v. Schneider (C. C. A.) 51 F.(2d) 685. He makes the point, however, that though section 4 of the Migratory Bird Treaty Act, under which the indictment is brought,[1] does not in terms limit the prohibition to migratory birds, the section is a part of a law enacted to give effect to the Migratory Bird Treaty, and must be construed as though its terms so limited it. So construed, the indictment states no offense, for quail are not migratory birds.

The contention is without merit. Both the nature of the legislation and the ordinary rules of statutory construction make this plain. The final step in a series of conservation acts[2] designed in co-operation with the states[3] to protect, preserve and increase the wild bird life of the country, the Federal Migratory Bird Treaty Act exerted both the treaty powers of Congress,[4] and its powers under the Commerce Clause[5] to that end. It gathered into the one act, and gave effect to, appropriate regulations. Directly affirming the co-operative character of the legislation, section 3 of the 1900 Act prohibited the carriage in interstate commerce of wild animals or birds killed in violation of the laws of any state. The Act of 1913, though it did undertake, beyond the power of Congress, as some courts held,[6] to assume control of migratory bird life, provided that "Nothing herein shall be deemed to affect or interfere with the local laws of the states for the protection of nonmigratory birds, nor prevent the states from enacting laws and regulations to promote and render effective the regulations of the Department of Agriculture provided under this statute." (37 Stat. 847, 848).

The Act of 1918, the Migratory Bird Treaty Act, in accord with Carey v. South Dakota (note, supra), provided in section 7 (16 USCA § 708) that it should not be construed as preventing the states from making laws or regulations not inconsistent with its provisions for the protection of migratory birds.

In the light of the purpose and history of the act, the most elementary principles of statutory construction make it clear that the section may not be read as limited to migratory birds. The fact that the other sections of the act, whose spring is the treaty power, are in terms so limited, and section 4, the exertion of power under the commerce clause contains no such limitation, is the strongest evidence of the fact that its generality was deliberate.

Further, its definition of the offense as the "taking, capture, etc.," of birds contrary to the laws of the states makes the section co-

---

[1] 16 USCA § 705. *Transportation or Importation of Migratory Birds.* "It shall be unlawful to ship, transport, or carry, by any means whatever, from one State, Territory, or district to or through another State, Territory, or district, or to or through a foreign country, any bird, or any part, nest, or egg thereof, captured, killed, taken, shipped, transported, or carried at any time contrary to the laws of the State, Territory, or district in which it was captured, killed, or taken, or from which it was shipped, transported, or carried. It shall be unlawful to import any bird, or any part, nest, or egg thereof, captured, killed, taken, shipped, transported, or carried contrary to the laws of any Province of the Dominion of Canada in which the same was captured, killed, or taken, or from which it was shipped, transported, or carried."

[2] Act of May 25, 1900, "enlarging the powers of the Department of Agriculture so as to include the preservation, distribution, introduction and restoration of game birds and other wild life." 31 Stat. 187. Federal Migratory Bird Act, March 4, 1913, 37 Stat. 847: Migratory Bird Treaty Act, July 3, 1918, 40 Stat. 755 (16 USCA § 703 et seq.).

[3] LaCoste v. Dept. of Conservation, 263 U. S. 545, 44 S. Ct. 186, 68 L. Ed. 437; Carey v. South Dakota, 250 U. S. 118, 39 S. Ct. 403, 63 L. Ed. 886.

[4] U. S. v. Selkirk (D. C.) 258 F. 775; Missouri v Holland, 252 U. S. 432, 40 S. Ct. 382, 64 L. Ed. 641, 11 A. L. R. 984.

[5] Rupert v. U. S. (C. C. A.) 181 F. 87; Hager v. Jonesboro, Lake City & Eastern Exp. Co., 103 Ark. 288, 147 S. W. 60; U. S. v. Smith (D. C.) 115 F. 423.

[6] U. S. v. Shauver (D. C.) 214 F. 154; U. S. v. McCullagh (D. C.) 221 F. 288.

extensive with, and effective to, enforce their acts.

It is not contended, it could not be, that the prohibitions of the laws of Mississippi and of Tennessee, in violation of which it is charged in the indictment the birds transported in interstate commerce were taken, extended only to migratory birds. These laws are general. They apply to birds taken in violation of the act, without reference to the ambit of their flight. The federal statute, coextensive with these laws, denounces as an offense the transportation in interstate commerce of any birds taken, etc., contrary to them.

The indictment charges the commission of a crime. The trial court did not err in remanding the prisoner to the custody of the marshal. The order discharging the writ is affirmed.