TAYLOR, CLEVELAND & CO. VS. CITY OF PINE BLUFF.

| 34 | 603 |
| 70 | 224 |
| 34 | 603 |
| 77 | 512 |
| 34 | 603 |
| 85 | 232 |
| 34 | 603 |
| 188 | 358 |
| 88 | 361 |

1. INJUNCTION: *Illegal municipal exactions enjoined.*
   By sec. 13, Art. XVI, of the constitution of 1874, chancery has power to inquire into the validity of municipal exactions, and to enjoin their collection when found invalid. But to enjoin a city from prosecutions for violations of its ordinances, is beyond its usual relief.

2. CITIES: *Power to provide for weighing produce, etc.*
   By sec. 12, act of March 9, 1875, for the creation and government of municipal corporations, a city has the power to pass and enforce by proper penalties, an ordinance "to provide for the measuring or weighing of hay, wood, or any other article for sale," within its limits. But if such ordinance be unreasonable, or directed to the end of raising a revenue, chancery will declare it void.

APPEAL from *Jefferson* Circuit Court in Chancery.

Hon. X. J. PINDALL, Circuit Judge.

*McCain*, for appellant.

*Elliott, C. B. Moore*, contra.

EAKIN, J. The city of Pine Bluff, which is of the second class, established, by ordinance, the office of city weigher, and directed him to weigh all articles brought to him for that purpose; and to give the party applying a certificate

of any weight so ascertained. In weighing cotton, he was to be governed by the rules of the board of trade of New Orleans, La. It was then provided, that all cotton, hay, or fodder, brought to the city for sale, should be weighed by the city weigher, as thereinafter specified; and that any person violating the provisions of said ordinance should be fined within the limit of $25 for each offense. It was made the duty of the weigher to furnish sufficient labor, and he was directed to charge the sum of twenty-five cents for weighing and certifying each bale. It was further provided that the amount of money received by the city scales should be appropriated for public improvements alone, and not for general city purposes.

The city weigher was allowed $30 per month in currency for his services; and was required to report his receipts, weekly, to the treasurer.

On the twenty-first of November, 1877, appellants filed this bill against the city, the mayor and city attorney, alleging:

That they were citizens of Pine Bluff, which was a large cotton market, and a city of the second class, and were there engaged in the business of buying and selling cotton. They set forth and exhibit the ordinances of the city upon the subject, and say that it has provided scales to weigh cotton and other articles for sale. They charge that the ordinance to compel all persons to weigh upon the city scales, and to pay a fee of twenty-five cents per bale therefor, was designed for revenue; and actually produces one of $3,000 per year. They say that they and other cotton-buyers have their own scales for weighing, and are put to great inconvenience and expense, and obliged to go a great distance to have their cotton weighed upon the city scales.

They charge that the mayor and city attorney combin-

ing, are used to procure the arrest, fine and imprisonment of persons who sell cotton in violation of said ordinance, and that when an appeal is taken in such cases the prosecution is dismissed to avoid a decision of the higher courts, upon the validity of the ordinance; and the city still continues said illegal exaction; and that, thus, the people who bring in cotton for sale are intimidated, and submit to pay, rather than to incur the expense, delay and vexation of defense.

They sue on behalf of themselves, and all others interested, seeking to restrain the defendants from making any further arrests for this cause, or instituting further proceedings to collect the fee; and to have the ordinance declared void; and for other relief.

Defendants show, by their answer, that to keep up said scales they incur considerable expenses; and deny that they derive revenue therefrom, to the extent alleged. They deny that any other citizens, save complainants, are prepared with scales to weigh cotton, or that they are put to any considerable inconvenience by weighing at the city scales. Upon the other hand, they claim that the ordinance is a protection to all who bring cotton for sale, and to all purchasers in the city, against unfair weights; and that it is cheerfully acquiesced in by all other merchants, and by vendors from the country. The charge of collusion between the mayor and attorney to avoid a decision upon the right, is emphatically denied.

The answer contains a demurrer in six paragraphs, amounting, in effect, to two causes: Misjoinder of parties defendants, which is not urged in argument; and want of equity in the bill.

The cause was heard upon the pleadings, and evidence, from which it appeared that there were parties who would

be willing to take the contract for the city weighing at ten cents a bale. For the rest, it did not affirmatively appear, that the ordinance was considered hard or oppressive by a majority of citizens, or cotton producers, seeking that market. On the other hand, the weight of evidence largely preponderates to establish the fact that the practice of requiring cotton to be weighed upon the scales, is a protection to both buyers and sellers, and contributes to the commercial prosperity of the place as a cotton market. It is proven, also, that the city derives a revenue, to some considerable extent, from the scales.

The court, in its decree, sustained the power of the city to compel buyers and sellers to weigh upon the established scales; and to charge a reasonable fee; and to punish those refusing to comply; but denied her power to raise a revenue therefrom. The court found the fee of twenty-five cents per bale to be excessive; and that all necessary and proper charges would not exceed fifteen cents per bale. Whereupon the city was enjoined from charging more, and costs were decreed against her. Complainants appealed.

So much of the bill as sought to enjoin the city from prosecutions for violation of the ordinance, was without the usual ambit of chancery relief. They are quasi-criminal, and are not directed to the specific object of collecting the tax or exaction, but claim to punish; and to collect fines and penalties; which are different from the fees for weighing. Equity is chary of all interference with criminal or penal prosecutions for violations of state or municipal law, although quick to relieve against penalties and forfeitures arising *ex contractu*. Against the former, if invalid, the remedy by defense at law is complete. If, in truth, it were, as complainants charge, but fail to prove,

that any persons had combined to institute a number of prosecutions for violation of the ordinance, knowing the same to be invalid, they would not only be themselves liable to a criminal prosecution, but to a civil action, also, on the part of persons aggrieved. There would be no occasion to invoke the protection of chancery.

As to other aspects of the bill our constitution provides (*article XVI, section 13*) that: "Any citizen of any county, city, or town, may institute suit, in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." For this purpose, a bill in chancery is most appropriate.

This widens the range of equity jurisdiction, and will sustain this bill, to the extent of giving the court power to inquire into the validity of the *exactions*, and if found void, so to declare it, and restrain the city authorities from its collection. After such a decree, its collection by any process whatever would be a contempt. But when ordinances are simply to prohibit and punish acts, they stand upon a different footing. No *exactions* are made of any one. They are merely prohibitory, and not in the contemplation or equity of the clause above quoted. Those who violate such ordinances do not seek to avoid an exaction, but to promote their interests, pleasure, or convenience, and may take the risk of a defense at law.

Under the general act for the creation and government of municipal corporations (March 9, 1875, section 12), the city had an express grant of power "to provide for the measuring or weighing of hay, wood, or any other article for sale." This excludes the particular subject-matter from general grants of power in the same act, and to this clause alone we must look for the authority of the city with regard thereto. Appellants contend that to *provide for*, means

simply to furnish convenient facilities for those who wish to use them, and to charge for their use, but does not empower the city to compel citizens to use them, and thus give the city the monopoly of the business of weighing.

Before the passage of this act it had been the habit of legislatures in other states (as we know from numerous cases in the books) to confer upon municipal corporations the control of weighing and measuring articles brought within their limits for sale, and the power to compel vendors to submit to the municipal regulations. They were not intended for the convenience of vendors. It is not within the ordinary range of municipal duties to furnish individuals with facilities for their private emolument, independent of any police considerations. The object of all such regulations had been to protect the citizens as purchasers—and this object would have been entirely defeated by leaving it in the option of the vendor to comply or not with the requirements of weighing or measuring. When our legislature granted the authority to "provide for" weighing and measuring, it is not to be presumed it was thought necessary to give the power to purchase and fix scales for public convenience; but rather that the city should be empowered to establish *the system* of requiring articles for sale to be weighed and measured. The court did not err in holding that the city had power to pass, and enforce by proper penalties, an ordinance of this nature. But, being a police regulation, it must not be unreasonable nor directed to the end of raising a revenue. Of course, the city council must first judge of what may be reasonable, and what fees will fairly compensate for the costs and expenses of the system, without regard to revenue. The courts will respect any fair exercise of this discretion, and will not be nice to take new accounts of expenses and

correct small excesses.   But the police power is too vague, indeterminate and dangerous to be left without control, and the courts have ever interfered to correct an unreasonable exercise or mistaken application of it.

This ordinance was imposed for revenue, and produced it.   That, indeed, was clearly the object sought by its passage.   The court did not err in considering it void to the extent of the excess over reasonable costs; nor, if the court had the right to apportion the fee, was there any error in fixing it at fifteen cents.   It might have been done by contract for ten, but upon the whole evidence, and allowing a fair margin, fifteen cents was not too much. If the ordinance had itself fixed the fee at fifteen cents, it would have been fairly sustained by the proof as reasonable.

But *non constat* that the council would have thought it necessary to pass any such ordinance as a police regulation, or with that sole object.   The ordinance was properly declared void, but the court should not have made a new one, according to its own views of what it should be, as a police regulation alone, shorn of its fiscal features. That should have been left to the action of the city authorities.   So much of the decree as permits the city to proceed and charge fifteen cents is erroneous.

Let the decree below be reversed, and enter a decree here declaring void all existing ordinances of the city, imposing fines or penalties upon any persons who refuse to weigh their cotton at the city scales; and restraining the city, under the present ordinances, from any proceedings to collect any exaction for the weighing of cotton— without prejudice to the right of the city to receive for the use of her scales any sums which may be voluntarily paid, or contracted to be paid; or her right to pass reasonable

ordinances to provide for the weighing of cotton, or other things offered for sale; and to make the same compulsory with the payment of a reasonable fee.