DREYFUS *v.* BOONE.

Opinion delivered December 7, 1908.

1. INJUNCTION—ILLEGAL EXACTIONS BY MUNICIPAL CORPORATIONS.—While equity will not enjoin anticipated criminal prosecutions, either State or municipal, it will give relief from illegal exactions attempted by municipal corporations. (Page 358.)

2. SAME—PRAYER FOR RELIEF—CONSTRUCTION.—Though one suing for relief against an illegal exaction under an invalid municipal ordinance does not expressly sue for the benefit of all other citizens, still, if the relief sought would inure to their benefit, the prayer of the complaint will be so construed. (Page 358.)

3. MUNICIPAL CORPORATIONS—MONOPOLY.—A municipal ordinance granting to a person the exclusive privilege of removing the deposits from unsewered privies within the city limits for a fixed period, and to

charge a certain sum therefor, to be paid by the owner of the premises, is a valid exercise of police power if the ordinance is reasonable in its terms and designed solely for the protection of the public health. (Page 359.)

4. MUNICIPAL ORDINANCES—INVASION OF PRIVATE RIGHTS.—An ordinance providing for the removal of deposits from unsewered privies is not void for preventing the owner of premises from removing such deposits himself. (Page 360.)

5. SAME—PRESUMPTION AS TO VALIDITY.—Every intendment is to be made in favor of the lawfulness of the exercise of municipal power making regulations to promote the public health and safety, and it is not the province of the court, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of the health and welfare of the community. (Page 360.)

6. SAME—ILLEGAL EXACTION.—A municipal ordinance which arbitrarily fixed the price to be charged for cleansing unsewered privies and removing the contents therefrom, and then let an exclusive contract to the person who was willing to pay to the city the largest share of his profits, thus realizing a substantial sum to the city, imposed an unlawful exaction on the inhabitants of the city, and its enforcement will be restrained. (Page 361.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Morris M. Cohn,* for appellants.

1. If the penal provisions of the ordinances are to be tested, Dreyfus is not a proper party to the action; the city or its proper officials being the parties in interest. As to the penal provisions, Boone has a complete and adequate remedy at law, and chancery would have no jurisdiction.

2. There can be no question of the general authority of municipal corporations to prevent as well as suppress nuisances. 70 Ark. 12; 76 Ark. 250; Kirby's Digest, § § 5438, 5461, 5458, 5593. Certainly, night soil or excrement is of itself a nuisance. It has been decided that residents of a city or town are entitled to protection against offensive odors and noxious smells, whether emanating from things that are nuisances *per se* or things that may become such. 85 Ark. 553. As to unsewered privies, not only are cities invested with a large discretion in regulating them and in providing for their being kept in a sanitary condition, but if, in the judgment of the city authorities, the business of removing the offensive matter should be confined to one re-

sponsible person or company, and this is done, it is a legitimate. exercise of power with which the courts will not interfere. And the right is not inherent in any inhabitant of a city to remove and dispose of the matter accumulated in his unsewered privy. 199 U. S. 306; *Id.* 325; 115 U. S. 683; 48 Fed. 458; 32 Fed. 403; 16 Wall. 57; 1 S. W. 606; 52 Mo. 177; 28 L. R. A. 679; 60 S. W. 355; 62 N. W. 41; 17 Am. Dec. 351; 126 Fed. 29, 39; 27 L. R. A. 540, note; 28 Cyc. 717; 60 Atl. 874; 123 Mich. 570; 47 La. Ann. 1029; 5 Sawyer' (U. S.), 502; 140 Ala. 527; 103 Tenn. 500. No express grant of power to a city to confer an exclusive franchise for such time as may be reasonable is necessary in matters of this kind. The ordinances are therefore not invalid for want of power in the city council to enact them, nor because they grant an exclusive privilege, nor obnoxious to constitutional rights of citizens. 115 U. S. 650; 22 Am. Dec. 421; 96 Am. Dec. 650; 7 Cowen (N. Y.), 585; 42 Hun, 317; 130 Mo. 600; 83 Wis. 222; 33 N. W. 610.

*J. H. Carmichael* and *R. C. Powers,* for appellee.

1. Where an ordinance is void, a court of chancery has power by injunction to prevent a multiplicity of prosecutions under it. 175 Ill. 145; 93 Ky. 43; 74 Ky. 435; 90 Ky. 193; 11 Md. 186.

2. The ordinance and the pretended franchise thereunder are void, being in violation of the State Constitution, art. 2, § § 18 and 19. No municipal corporation in the State has authority to grant exclusive franchises, except for water, gas and street railroads. In order to grant an exclusive franchise, a municipal corporation must have express legislative authority for so doing. Art. 12, § 4, Const.; 27 Ark. 469; 3 Ark. 114; 45 Ark. 455; *Id.* 338; 71 Ark. 8; 2 Dillon Mun. Corp. (4 Ed.), 283; McQuillin on Mun. Ord. 900; Tiedeman, Police Power, 638; 102 Fed. 663; 47 Ohio 52; 146 U. S. 258; 13 Col. App. 80; 76 Fed. 271; 6 Mont. 502; 180 U. S. 587; 28 Cyc. 641, (1); 13 L. R. A. 383; 18 Ohio, 262; 27 L. R. A. 545; Kirby's Digest, § 5448. When the Legislature authorized municipal corporations to grant exclusive franchises in the three specified instances, that authority was, under the maxim *"expressio unius est exclusio alterius,"* to which this court is committed, withheld in all other in-

stances and for all other purposes. Broom's Legal Maxims, 480-489; 9 Cyc. 584; 19 Cyc. 23-27; 1 Ark. 203; *Id.* 513; 20 Ark. 410; 29 Ark. 479; 34 Ark. 676; 35 Ark. 457; 49 Ark. 231; 60 Ark. 95.

3. The ordinance is void because it attempts to condemn every unsewered privy in the city as a nuisance once every thirty days during the term of the franchise. A thing cannot be declared by a city counsel to be a nuisance which has not been made so by law or pronounced by judicial determination to be such. 41 Ark. 527; 45 Ark. 338; 7 Col. 345; 49 Ark. 165; 52 Ark. 23; 40 N. Y. 273.

4. It is void in that it deprives the owner of a valuable commercial commodity, without process of law. Art. 2, § 21, Const.; 13 Ark. 199; 15 Ark. 43.

5. The purpose and effect of the ordinance and franchise thereunder was not to regulate and care for the sanitary condition of the city, but to produce revenue. The city has no authority to grant a license as a matter of revenue. 34 Ark. 603; 70 Ark. 221; 43 Ark. 82; 41 Ark. 485; 70 Ark. 28.

6. The ordinance is also void because it prohibits the owner of the premises from removing the accumulations in the privies. 50 L. R. A. 473.

McCULLOCH, J. This case brings in question the validity of two ordinances of the city of Little Rock relating to the removal of deposits from unsewered privies. The two ordinances were both passed at the same meeting of the city council, they relate to the same subject, and are so interdependent that they must be read together as composing a scheme to accomplish the desired end. One of them is entitled, "An ordinance to prescribe the manner of constructing and cleaning the unsewered privies of the city of Little Rock and fixing penalties for violation thereof." It provides, among other things, that "the occupant, or occupants, or owner of said premises shall have the accumulation and deposits removed from said privies by the person or persons authorized by and under contract with the city to clean the unsewered privies at least once every thirty days, and oftener if it shall be ordered by the board of health, police, health commissioner," etc., and that if any such occupants or owners shall fail or refuse to have such accumulation and deposits removed every thirty days or oftener when ordered as aforesaid, they shall

be guilty of a misdemeanor and be fined in any sum not less than one nor more than five dollars. It further provides that "it shall be unlawful for any one, other than the person or persons with whom the city has contracted, or his or their agents or employees, to remove or convey through any of the streets or alleys of the city such accumulation and deposits of privies."

It also provides that such accumulation and deposits shall be removed during certain hours of the night-time, that it shall be conveyed away in air-tight metallic box vehicles and shall be deposited or burned at such places as the board of health may from time to time designate.

The other ordinance grants to appellant Dreyfus an exclusive right for a term of ten years, on the terms stipulated in the ordinance, "of cleaning the unsewered privies now located within the incorporated limits of the city of Little Rock, or that may hereafter be 'constructed within said limits, and of conveying the contents of said unsewered privies through the streets and alleys of the city," and impowers him to "charge the occupant, occupants or owners of premises upon which is located an unsewered privy or privies not exceeding fifty cents for each cleaning of such privy, or privies, including the conveyance of the contents thereof out of the city."

Appellee Boone instituted this suit in chancery against appellants to restrain the enforcement of these ordinances on the ground that they are void. He alleges in his complaint that he is a resident of the city, and has an unsewered privy on his premises, which is not kept in unsanitary condition, but that he has been arrested and fined and threatened with further punishment for refusing to permit said Dreyfus to remove the deposit from the privy; that said ordinances create a monopoly in favor of said Dreyfus, and inflict an unjust exaction on himself and the other citizens of Little Rock.

Appellants in the answer seek to uphold the ordinances, and allege, in support of the vested rights therein, that the contract for exclusive right of cleaning unsewered privies and removing deposits therefrom was submitted by the city to competitive bidding, and that he was the highest bidder, and that he paid to the city annually the sum of $3,160 for said privilege.

The court sustained a demurrer to the answer and, appel-

'lants declining to amend or plead further, rendered a decree in accordance with the prayer of the complaint.

The facts being undisputed, we have the question presented by the pleadings, whether the ordinances in question constituted a valid exercise of the police power, and whether or not appellee can invoke the aid of a chancery court for redress.

The rule has been repeatedly announced by this court, and it is undoubtedly in accordance with the great weight of authority, that equity will not enjoin anticipated criminal prosecutions, either by officers of the State or by municipal ordinances. *Portis* v. *Fall,* 34 Ark. 375; *Medical & Surgical Institute* v. *Hot Springs,* 34 Ark. 559; *Taylor* v. *Pine Bluff,* 34 Ark. 603; *New Home Sewing Machine Co.* v. *Fletcher,* 44 Ark. 139; *Waters-Pierce Oil Co.* v. *Little Rock,* 39 Ark. 412; *Thompson* v. *Van Lear,* 77 Ark. 506.

But courts of equity will give relief from illegal exactions attempted by municipal corporations, for the Constitution of this State expressly provides that "any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exaction whatever." Section 13, art. 16.

The distinction was pointed out by Judge EAKIN in delivering the opinion of the court in the case of *Taylor* v. *Pine Bluff, supra,* when he said, with reference to the above quoted constitutional provision, that "this widens the range of equity jurisdiction, and will sustain this bill, to the extent of giving the court power to inquire into the validity of the exactions, and, if found void, so to declare it and restrain the city authorities from its collection." In that case the ordinance under consideration was one providing for a city weigher of cotton and other products requiring payment of a certain fee therefor, and requiring that all products brought into the city of Pine Bluff for sale should be weighed by the city weigher. The court held that the fee charged under the ordinance was unreasonable and rendered the ordinance void, and its enforcement was enjoined. The same principle controls and permits appellee to sue in equity to prevent the alleged illegal exactions imposed by these ordinances. Appellee did not, in his complaint, pretend to sue for the benefit of all other citizens, but the relief sought will, if obtained, inure to

the benefit of all others, and it is the duty of the court to construe the prayer to be for the relief of others.

The validity of the ordinances is challenged on the ground that they create a monopoly in a private business—that of cleaning unsewered privies and removing deposits therefrom.

Nearly all of the cases cited by counsel for appellee in support of their attack relate to the creation of private monopolies, and have no application to the question whether or not a municipality can, as a method of carrying out a police regulation which is otherwise valid, create incidentally a monopoly in a business involved in its enforcement. *Slaughter House Cases,* 83 U. S. 36; *Butchers' Union Co.* v. *Crescent City Co.,* 111 U. S. 746; *Combs* v. *McDonald,* 43 Neb. 632; *Dickinson* v. *Cunningham,* 140 Ala. 527; *Leeper* v. *State,* 103 Tenn. 500. Even the case of In re *Lowe,* 54 Kansas, 757, which is so confidently relied on by counsel for appellee, recognizes this principle, though it refuses to apply it to the facts of that case. The court there said: "While monopolies of any ordinary legitimate business are odious, we have seen that monopolies are upheld when deemed necessary in executing a duty incumbent on the city authorities or the Legislature for the preservation of public health. It is sometimes a matter of great nicety and difficulty to determine whether a particular business or calling is in its nature so directly connected with the public welfare that the performance can only be safely entrusted to some one acting under public authority."

The primary question, then, is whether the regulation attempted is a valid exercise of the police power, and, if so, whether the business which is necessarily an incident to its enforcement could not safely be entrusted to one or a limited number of persons acting under public authority, for if it is a valid regulation, reasonably exercised, and its enforcement should properly be intrusted to one or more persons, then it does not amount to the creation of a monopoly in any obnoxious or technical sense so as to become illegal as an improper restraint of trade. We think that the weight of authority sustains the power of a municpality to enforce a regulation of this character if the ordinance is reasonable in its terms, and is designed solely for that purpose. *California Reduction Co.* v. *Sanitary Works,* 126 Fed. 29, *California Reduction Co.* v. *Sanitary Reduction Works,* 199

U. S. 306; *Gardner* v. *Michigan,* 199 U. S. 325; *People* v. *Gardner* (Mich.), 100 N. W. 126; *Grand Rapids* v. *De Vries,* 123 Mich. 570; *Smiley* v. *McDonald,* 42 Neb. 5; *Coombs* v. *McDonald,* 27 L. R. A. 540, 43 Neb. 632; *Vandine, Petitioner,* 6 Pick. (Mass.), 187; *Walker* v. *Jameson,* 140 Ind. 591; *State* v. *Fisher,* 52 Mo. 174; *State* v. *Payssan,* 47 La. Ann. 1029; *Louisville* v. *Wible,* 84 Ky. 290.

The only authority to the contrary which has been brought to our attention is In re *Lowe,* 54 Kansas 757, already referred to, which seems to stand alone.

It is argued that the provision of the ordinances which prevent appellee from cleaning his own privies and removing the deposits himself is an invasion of his private rights, and therefore void.

The Supreme Court of the United States in *Crowley* v. *Christensen,* 137 U. S. 86, truly said that "the possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the county essential to the safety, health, peace, good order and morals of the community. Even liberty itself, the greatest of all rights, is not an unrestricted license to act according to one's own will."

The same court said in another case that "every intendment is to be made in favor of the lawfulness of the exercise of municipal power, making regulations to promote the public health and safety, and that it is not the province of the courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people in the community." *Dobbins* v. *Los Angeles,* 195 U. S. 223.

The Nebraska courts, in one of the cases cited above, with reference to a similar ordinance and contract; said:

"The removal of the noxious and unwholesome matter mentioned in the contract tends directly to promote the public health, comfort, and welfare, and is, therefore, a proper exercise of the police power. Nor is the fact that in this instance the city has by contract conferred an exclusive privilege material. From the power thus conferred upon the city is implied the duty to determine the means and agencies best adapted to the end in view. The means adopted appear to be not only a reasonable and neces-

sary regulation, but a judicious exercise of the discretion conferred upon the city. That the subject of all such regulations can be best attained by intrusting the work in hand to a responsible contractor who possesses the facilities for carrying it on with dispatch and with the least possible inconvenience to the public is apparent to all." *Smiley* v. *McDonald, supra.*

We entertain no doubt that a city has the power to provide by proper ordinance regulations requiring the removal at suitable intervals of the deposits from unsewered privies and to grant the exclusive right to one or any limited number of persons to do the work for a rate of compensation to be fixed by the city and to be paid by the owner or occupant of the premises. The statutes of the State confer upon municipal corporations the power thus to provide for the safety, health and welfare of the inhabitants thereof. Kirby's Digest, § § 5438, 5461, 5458, 5593.

Though an unsewered privy may not be a nuisance unless allowed to get in an unsanitary condition, yet it is a matter of common knowledge that unless they are cleaned at reasonably frequent intervals and the deposits removed therefrom they become unsanitary and dangerous to health. Therefore it is within the power of a municipality to require this to be done.

What we have said, however, applies to the general power of a municipality to pass such an ordinance, but the question remains to be determined whether the power has been validly exercised in the passage of these particular ordinances. The right to pass ordinances such as these imposing regulations and burdens of this kind rests solely upon the police power vested in municipal corporations to legislate for protection of the health, safety and convenience of the inhabitants thereof.

Ordinances of this kind must be reasonable, and must be directed solely to legitimate regulation of the subject-matter undertaken. They can not be passed, under the guise of police regulations, in order to raise revenue. *Taylor* v. *Pine Bluff,* 34 Ark. 603; *Stamps* v. *Burk,* 83 Ark. 351; *Dobbins* v. *Los Angeles,* 195 U. S. 223.

In *Taylor* v. *Pine Bluff, supra,* the court said:

"The court did not err in holding that the city had power to pass, and enforce by proper penalties, an ordinance of this nature. But, being a police regulation, it must not be unreasonable

nor directed to the end of raising a revenue. Of course, the city council must first judge of what may be reasonable, and what fees will fairly compensate for the costs and expenses of the system, without regard to revenue. The courts will respect any fair exercise of this discretion, and will not be nice to take new accounts of expenses and correct small abuses. But the police power is too vague, indeterminate and dangerous to be left without control, and the courts have even interfered to correct an unreasonable exercise or mistaken application of it."

Applying the doctrine thus established, we can not escape the conclusion that the ordinances and contract in question were put in force partly, if not solely, for the distinct purpose of raising revenue. If not so, why should the city attempt to make money out of the regulation by letting to the highest bidder the contract and by receiving the sum of $3,160 annually for the privilege granted? This shows that the system is wrong, in that it is designed, not to procure the work to be done as cheaply as possible for the benefit of those who have to pay for it, but to obtain as much money as possible for the city out of the earnings of the business. The city can not, for the purpose of raising revenue, become the sharer of the profits arising from an exclusive privilege granted to enforce a police regulation. Of course, the higher the price is fixed for the work, the greater is the profit, and the more a bidder can offer to pay for the contract. If the scavenger can, by charging the price fixed in the ordinance for cleaning privies and removing the deposits, afford to pay the city a substantial sum annually out of his profits, he can and would do the work cheaper if not required to share his profits with the city. Instead of letting the contract to a bidder who was willing to do the work for the lowest price, the city has arbitrarily fixed a maximum price to be charged the property owners or occupants for doing the work and then let the contract to the bidder who was willing to pay to the city the greatest part of his profits. In other words, if the scheme was intended as a reasonable police regulation for the safety and convenience of the inhabitants, the contract should have been let to the lowest bidder for the work, instead of the highest bidder for the privilege of doing the work at the prices fixed. Every dollar which is paid to the city under the present system represents that much of

an excessive charge against those who have to pay for the work, for it is that much more than the contractor is actually getting for his work.

The city in this way is exacting a profit out of the business which has to be paid by those who are compelled to pay for the work. That, we think, the city has no right to do, and the fact that the regulation is based upon this plan stamps it as a scheme to raise revenue. Whether or not such was the actual intent of its framers we can not inquire, but such undoubtedly is its effect.

We cannot say what would be a reasonable price for doing the work if the profits were not shared with the city. Nor can we say that the city fixed a reasonable price for the work, as the submission of the contract to competitive bidding and the acceptance of a substantial sum annually for granting the exclusive privilege show that it was intended to raise revenue.

We do not overlook the fact that in the California case decided by the Supreme Court of the United States in *California Reduction Company* v. *Sanitary Works, supra,* the court passed upon and upheld an exclusive privilege of a similar kind for which the grantee paid a substantial sum to the city which granted it. That fact appears only incidentally in the statement, and that feature of the case was not passed upon by the court. The ordinance granting the privilege was not attacked on that ground, and the court was not called upon to decide, and did not undertake to decide, whether the provision was designed for raising revenue or for police regulation. We can not, therefore, regard that case as an authority on this particular question.

We are of the opinion that the chancellor was right in holding that the ordinance imposed an illegal exaction upon inhabitants of the city, and his decree restraining the enforcement thereof is affirmed.