JONESBORO, LAKE CITY & EASTERN RAILROAD COMPANY v. ADAMS.

Opinion delivered February 15, 1915.

1. GAME—INTERSTATE SHIPMENT—FEDERAL STATUTE.—Section 3 of the Lacey Act (Act of Congress of May 25, 1900), concerning interstate shipments of game animals which have been killed is violated when game which had been lawfully killed in this State, is shipped into another State.

2. GAME—INTERSTATE SHIPMENT—CONFLICT OF LAWS—DUTY OF CARRIER. —Appellees shipped game, that had been killed in this State, into Illinois. Under the Illinois statute, at the time it was shipped into that State, it was lawful to ship game into Illinois, and there was, therefore, no violation of section 5 of the act of May 25, 1900, known as the Lacey Act, in making the shipment into Illinois, and it was the duty of the carrier to protect the consignment from any unlawful seizure by the authorities of the State of Illinois.

3. GAME AND FISH—PRESERVATION—STATUTORY PROVISIONS.—The rule of equality prescribed by article 2, section 18, Constitution 1874, which prohibits the law-makers from granting to any citizen or class of citizens privileges, which, upon the same terms, shall not equally belong to all citizens, does not prevent the Legislature, in the enactment of laws for the preservation of game and fish, from exempting from the operation of such laws territory in which it is found unnecessary to impose any regulations.

4. GAME AND FISH—PRESERVATION—LEGISLATIVE POWER.—The Legislature has the power to preserve the game and fish of the State and to make regulations which result in preservation. The Legislature may select territory where preservation is found necessary and prescribe regulations there, which are not imposed elsewhere.

5. GAME AND FISH—PRESERVATION—LEGISLATIVE POWER.—The only justification for any regulation for the preservation of game and fish, is the necessity for preservation in the State, and any unjustifiable regulation or exclusion in a given territory is obnoxious to the Constitution.

6. GAME AND FISH—PRESERVATION—EQUALITY OF REGULATION.—All measures for the preservation of game must bear equally on all citizens, and whatever privileges are extended in the taking of game must be open to all in equal degree.

7. GAME AND FISH—SHIPMENT OF—DISCRIMINATION—VALIDITY OF STATUTE.—Act No. 397, page 1131, Acts 1909, providing for the shipment of game out of certain territory in Mississippi county, held to be void, being in violation of article 2, section 18, Constitution 1874, since it grants to the citizens of one county privileges denied those of other counties.

8. GAME AND FISH—PRESERVATION—INVALID STATUTE.—Act 397, page 1131, Acts 1909, being invalid, because in conflict with article 2, section 18, Constitution 1874, Kirby's Digest, § § 3618, 3619 and 3630, being the general law on the subject, are in full force and effect in Mississippi county.

Appeal from Mississippi Circuit Court, Chickasawba District; *W. J. Driver,* Judge; reversed.

*C. A. Cunningham,* for appellant.

1. The act, Acts 1909, page 1131, is unconstitutional. Const. 1874, art. 2, § 18; 58 Fla. 255, 19 Ann. Cas. 235; 110 Ark. 204; 5 Pac. 927; 38 L. R. A. 561; 26 L. R. A. (N. S.) 794.

If the act is unconstitutional, sections 3618-19-20, of Kirby's Digest, and Act No. 37 of 1905, are still in effect. The contract of shipment was in violation of law, and appellant is not liable for the failure of its connecting carrier to make delivery.   103 Ark. 288.

2. Even if the act is constitutional, appellant is not liable for the seizure of the shipment by the game warden of Illinois.   40 L. R. A. 251; 56 Ark. 267; 73 Ark. 236; 211 U. S. 31; 108 Fed. 623; 103 Cal. 476; 169 Ill. 218; 43 Atl. 929; 107 N. Y. Supp. 1076; 51 Ohio, 209; 103 Ark. 293; Lacey Act, § 5 (act May 25, 1900, chap. 553, 31 Stat. L. 187) ; 3 Fed. Stat. Ann. 152; 49 Ohio, 489.

3. The carriers should not be held liable for failure to deliver the shipment to the consignees, if the failure

to do so was through no lack of care or diligence on their part.   74 Mo. 351; 35 Barb. 188.

*Appellees, pro se.*

McCulloch, C. J.  Appellees, Adams, McMasters and Rice, instituted separate actions against appellant to recover the value of barrels of wild ducks consigned from Manila, Arkansas, to Chicago.  The ducks were killed on Big Lake in Mississippi County, Arkansas, and shipped on through bill of lading from Manila, a point on appellant's line of road.  Appellant received the consignments and transported the same to Blytheville and delivered them to the Wells Fargo & Co. Express, the last named carrier transporting the shipment to Chicago.  The ducks were seized at Chicago and confiscated by a game warden acting for the United States and also for the State of Illinois, and appellant defended on the ground that it is not liable for the value of the shipment because of such confiscation by lawful authority at the destination.  The three cases were consolidated and tried together and resulted in judgments in favor of each of the plaintiffs. The issues were the same in each case.

Appellant contends that it is not liable because the ducks were shipped in violation of the laws of this State; that the shipment was also in violation of the act of Congress of May 25, 1900, known as the Lacey Act; and, third, that the ducks were confiscated in Chicago pursuant to the authority conferred by statutes of the State of Illinois.  If either of these contentions be sound, then it follows that there is no liability on the part of the carrier, for if the shipment was unlawful, or if the seizure in Illinois was by lawful authority, the carrier can not be held responsible for damages.  *Eager* v. *J., L. C. & E. Express Co.,* 103 Ark. 288.

The Federal statute provides, in substance, that it shall be unlawful for any person to deliver to a common carrier for shipment from one State or territory to another State or Territory any wild animals or birds which have been killed in violation of the laws of the State in which the same were killed, but that nothing in the act

shall prevent the transportation of dead birds or animals killed during the season when the same may be lawfully captured and the exportation of which is not prohibited by the laws of the State or Territory in which the same are killed. Another section provides that all packages containing "such dead animals, birds or parts thereof, * * * shall be plainly and clearly marked, so that the name and address of the shipper and the nature of the contents may be readily ascertained on inspection of the outside of such packages." Still another section provides that "the dead bodies or parts thereof of any wild game animals, or game or song birds transported into any State or Territory, or remaining therein for use, consumption, sale, or storage therein, shall upon arrival in such State or Territory be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such animals or birds had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

(1) If the ducks shipped by appellees were lawfully killed and exported, that is to say, if the statute of this State was not violated in killing or exporting the ducks, there was no violation of the section of the Lacey Act (section 3) first referred to above. The evidence tends to show, and the jury have upon proper instructions found, that the packages were prepared and shipped as required by the statute "so that the name and address of the shipper and the nature of the contents may be readily ascertained on inspection of the outside of such package."

(2) The next contention of appellant is that the game was lawfully seized and confiscated by the game warden in Illinois, and that the carrier was thereby absolved from any liability. It was an interstate shipment, but section 5 of the Lacey Act quoted above places the game imported into any State under the police power of that State, and makes it lawful for the State to legislate with reference thereto. The inquiry, then, is whether or

not the statutes of Illinois authorized the seizure and confiscation of the property; for if it did, the carrier is absolved from liability; but, on the other hand, if there was no such authority, the carrier relinquished possession at its peril. Appellant attempts to show that the laws of Illinois justified the seizure, but an examination of the statutes does not bear out that contention. The statute there provides that game may be received from other States between the first day of October and the first day of February of each year, and the evidence in this case shows that this game was killed and shipped during the open season prescribed by the Illinois Act. Therefore there was no justification, under the laws of Illinois, for the seizure, for it was the carrier's legal duty to protect the consignment from any unauthorized seizure.

So the vital point in this case is whether or not appellees violated the laws of this State in exporting the game. There is a special statute making it lawful to purchase or sell wild ducks in certain portions of Mississippi County, where those shipped by appellees were killed, and also making it lawful to ship them out of the State from that locality. Appellant insists, however, that the special statute is void, and that for that reason the shipment of game was unlawful. That question was not decided in the Eager case, *supra*. The general statutes of the State provide that it shall be unlawful for any person or corporation to purchase or have in possession for barter or sale any wild game or wild fowl of any kind; also that it shall be unlawful for any person or corporation to export or carry beyond the lines of the State any such wild game or fowl, and penalties are prescribed for violation of either of those provisions. These provisions are found in sections 3618, 3619 and 3620 of Kirby's Digest. The General Assembly of 1909 enacted a special statute applicable to certain townships in the Chickasawba District of Mississippi County (Acts 1909, page 1131, No. 397), (the point of shipment in this case being a railroad station in one of those townships), entitled ''An Act prohibiting the selling or shipping of certain game from certain town-

ships in the Chickasawba District of Mississippi County, Arkansas, and repealing sections 3618, 3619 and 3620 of Kirby's Digest, in so far as they apply to said townships." The first three sections of the act were substantially copied from the sections of Kirby's Digest above named, except that the purchase or sale or exportation of wild ducks and geese is excluded from the operation of the statute. Section 4 of the act provides that the above named sections of Kirby's Digest are repealed "in so far as same affect and apply to Big Lake, Neale, Hector and Bowen townships in the Chickasawba District of Mississippi County." Section 5 of the act provides that it shall apply only to the townships named above. The contention of appellant is that this act is void for the reason, in the first place, that it is in hopeless obscurity as to what the lawmakers meant, and also that it amounts to an unjust discrimination against other citizens of the State. When the whole of the special statute is carefully considered, we think that the meaning of the Legislature is manifest and that such meaning is expressed with sufficient certainty to accomplish the design of the lawmakers. It is clear that the Legislature intended to repeal the sections of Kirby's Digest mentioned, so far as the same applied to the designated territory in Mississippi County, and to substitute therefor the three sections set forth in the special act which excluded wild ducks and geese from its provisions. The effect of this statute is to repeal, so far as applicable to that territory in Mississippi County, the inhibition against purchasing, selling or exporting wild ducks and geese and to make it lawful to sell and export that kind of wild game. The further argument against the validity of the act is that it is unconstitutional in that it violates the section of the Constitution which provides that the General Assembly "shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens." Const. 1874, art. 2, § 18. It is contended that while any person in the State may go to this territory and kill game and ship it out of the State, it would be such

an inconvenience to persons living in distant portions of the State as to practically exclude them from the enjoyment of the privilege and in effect to deny them the privilege which is enjoyed by those who reside in the territory named. The rule laid down by this court in the case of *Lewis* v. *State,* 110 Ark. 204, is invoked as sustaining that contention. That case involved the question of the validity of a statute which required non-residents of a certain locality to pay a license fee for the privilege of hunting and fishing therein, but exempted residents of the locality from that imposition. We said that all the citizens of the State had equal right to enjoy the privilege of hunting and fishing, and that no one citizen nor class of citizens could be granted a privilege in that regard which did not equally belong to all other citizens.

(3-4-5)   The statute now under consideration does not in express words, as did the one in the *Lewis* case, *supra,* classify the people in a favored territory and grant to them privileges not extended to citizens of other parts of the State; but if the effect of the statute in its operation necessarily results in discrimination, it is equally obnoxious to that provision of the Constitution which prohibits the lawmakers from granting "to any citizen or class of citizens privileges * * * which upon the same terms shall not equally belong to all citizens." We do not mean to say that the rule of equality prescribed by the Constitution prevents the Legislature, in the enactment of laws for the preservation of game or fish, from exempting from the operation of such laws territory in which it is found unnecessary to impose any regulations. There may result, in the practical operations of such exemptions, inconvenience in the enjoyment of the privilege which amounts to an exclusion of certain persons, but that does not necessarily render the statute void. Absolute equality in the enjoyment of privileges and immunities is not always practicable, any more than is the disposition of other benefits or burdens. The Legislature undoubtedly has the power to preserve the game and fish of the State and to make regulations which result in pres-

ervation. The lawmakers may select territory where preservation is found necessary and prescribe regulations there which are not imposed elsewhere, and that does not constitute discrimination, even if some citizens are by reason of inconvenience excluded from the enjoyment of the privilege of hunting or fishing in the territory excluded from the regulatory provisions. But the only justification for any regulation at all is the necessity for the preservation of the game and fish in the State, and any unjustifiable regulation or exclusion in a given territory is obnoxious to the Constitution if it results in denial to one class of citizens of privileges in the way of hunting or fishing on equal terms with all others. The Constitution requires that the opportunity to enjoy a privilege shall be equal. Not precise equality, of course, but substantial equality, and the opportunity must be equal in degree.

(6) We said in the *Lewis* case that ''when the sovereign undertakes to regulate or restrain the individual in his right as a member of the community to enjoy the right to take and use this common property of all it must do so upon the same terms to all members of the community alike. The common right, which one individual of the whole community is entitled to enjoy as much as another can not be made by law the exclusive privilege of the people of a certain class or section upon terms and conditions that do not apply to the whole people alike.''

It remains only for us to apply the principles thus announced to the statute now under examination. Wild ducks and geese are migratory fowls, and do not propagate in this State, but come from colder latitudes. A few species of wild ducks found here are not migratory, but those which are found in large numbers during the winter season, and which are generally sought by hunters, are of the migratory sort. It is impossible, therefore, to enact laws in a single State or locality for the preservation of such fowls. Nevertheless, the people of this State are interested in the preservation of all kinds of wild game and fowls, and the lawmakers contributed to the preserva-

tion of wild ducks and geese, as well as other wild game, by enacting a general statute prohibiting the purchase, sale or exportation thereof. Kirby's Digest, § § 3618-19-20. The purpose of that legislation was to restrict the taking of game for use only by persons who by their own skill may kill or capture it, and such others in the State to whom they may see fit to give it. It was thought in that way the wholesale slaughter of game could be prevented. The Legislature subsequently passed the special statute under consideration, whereby a selection was made of four townships in Mississippi County and that territory was exempted from the operation of the general statute so far as concerned the purchase, sale or exportation of wild ducks and geese. Those four townships embrace a large body of water known as Big Lake, and wild ducks and geese are found there during the winter season. It is in line with what investigators and writers on the subject term "migration routes" along the valleys of great waterways. Now, it is readily seen that the lawmakers, instead of protecting this kind of game in the place where it is most abundant, have removed all restrictions upon its slaughter and have thrown wide the door to destruction. It is impossible to find any reason for the exemption except one of favoritism to the people of that locality, who doubtless have been importunate enough through their representatives in the Legislature to induce that body to confer the special privilege. If the exemption applied to non-migratory game, we might indulge the presumption that the lawmakers found it was so abundant there that restraints were unnecessary to preserve it; but in the case of migratory fowls, that reason entirely fails. The supply is easiest exhausted at the place where it is most abundant. The exemption of a territory free from the visits of such migrants would be unobjectionable, as the importance of measures for preservation of that kind of game in a given territory lessens in the ratio of its scantiness therein. If it is plentiful, the drain on the source of supply is great and restraints

are necessary; but if meager, the exhaustion there has little effect at the source of supply.

(7-8) It follows, therefore, that the enactment of the special statute exempting the territory named from the operation of the general statute was wholly arbitrary and without any foundation whatever in its relation to the preservation of game. In searching for a reason for it, there is no escape from the conclusion that it was intended as a special privilege to the people who live in that territory or close enough to participate in the enjoyment of the privilege especially conferred. At any rate, such is the effect of the statute in its practical operation, and as no justification can be found for the discrimination, it falls within the inhibition in the Constitution against the grant of special privileges. No argument is needed to show that the privilege is discriminatory. Wild ducks and geese are found in great abundance in other parts of the State distant from this exempted territory, but the inhabitants of those localities can not sell or export them when killed, nor can any person purchase them. What reason is there for withholding from citizens of Chicot County or of Lafayette County the privilege of selling, exporting or purchasing wild ducks, while the privilege of doing so is freely extended to citizens of certain townships in Mississippi County? Such game comes from the same source, the cold climates of the North, and visits our State during the winter season. While here it is subject to the regulatory laws of the State and is preserved for the common use of our citizens. All measures for preservation must bear equally on all citizens, and whatever privileges are extended in the taking of game must be open to all in equal degree. It is true that under this statute any citizens of the State may go to the exempted territory and purchase, sell or export wild ducks and geese, but for all practical purposes citizens of distant portions of the State are excluded by reason of the inconvenience of going there. The privilege can not be said to be extended to them on equal terms. Besides, they are not granted the privilege of purchasing, selling or ex-

porting such game at or near their own homes and that amounts to a discrimination. So the failure of any reason for an exemption necessarily stamps the statute as a discriminatory one and renders it void. Being wholly void, it leaves the general statutes, which it sought to repeal, in full force and operation in that territory as well as in all other portions of the State. *Union Sawmill Company* v. *Felsenthal*, 85 Ark. 346. The shipments by appellees were unlawful under the laws of the State, and in consequence thereof, in violation of the Lacey Act. The carrier is not liable.

The judgment in each case is reversed and the cause dismissed.