MERRITT v. GRAVENMIER.

Opinion delivered November 9, 1925.

1. STATUTES—VALIDITY.—Where Special Acts 1919, p. 177, was declared valid in a prior decision of this court, it was error to hold that the statute was invalidated by reason of an amendment thereof by Special Acts 1921, p. 94, § 1, since, if latter act is invalid, it left the former act unimpaired.

2. FISH AND GAME—LICENSE FEES—VALIDITY OF SPECIAL ACT.—Where Special Acts 1919, p. 177, regulating the catching of non-game fish in certain lakes and streams, provided certain license fees which were not excessive at the time the statute was enacted, the fact that the license fees subsequently collected under the act are more than sufficient to enforce it affords no reason for declaring the act unconstitutional.

3. FISH AND GAME—VALIDITY OF ACT REGULATING TAKING OF FISH.—
   Special Acts 1921, p. 94, extending the provisions of a former
   statute regulating the catching of fish to all waters of the county,
   is not invalid as arbitrary and unreasonable, in that some bodies
   of water in the county do not require such regulation, since such
   matter is for the consideration of the Legislature.

4. LICENSES—REVENUE ACT.—Special Acts 1923, p. 1057, regulating
   the catching of fish, and providing for paying by licenses of a
   percentage of the gross receipts to the county for expenses of
   enforcement and of the surplus to the road fund, is not invalid
   as a revenue statute, since the fact that a surplus exists does
   not make the statute one for revenue only, and since the Legis-
   lature has the power to provide for the distribution of the sur-
   plus revenue in carrying out the act.

5. LICENSES—VALIDITY OF REVENUE STATUTE.—Special Acts 1923,
   p. 1771, regulating the catching of fish and providing that all
   funds accruing to the county from license fees shall be distributed,
   75 per cent. for expenses of enforcement, and 25 per cent. for
   school fund, is a revenue statute, but is not invalid, since the right
   to take fish and game is a privilege which may be taxed under
   the powers delegated to counties, under Const., art. 2, § 23.

6. TAXATION—POWER DELEGATED TO LOCAL AGENCY.—The power to
   delegate the right to tax, under Const., art. 2, § 23, authorizes
   the Legislature to exercise the delegated power for the benefit
   of local political agencies, and the fact that funds from taxation
   are for benefit of the locality affected does not render the statute
   invalid, where there is no discrimination in favor of local citizens,
   since the delegation of power necessarily implies authority to ex-
   ercise it solely for local benefit.

7. LICENSES—EXEMPTION OF MINORS.—Special Acts 1923, p. 1771,
   regulating catching of fish and exempting minors under age of
   16 from its provisions, is not discriminatory.

8. INJUNCTION—CRIMINAL PROSECUTION—JURISDICTION OF CHAN-
   CERY.—The chancery court has no jurisdiction to enjoin a crimi-
   nal prosecution, but has jurisdiction to relieve against unlawful
   exactions.

Appeal from Chicot Chancery Court; *E. G. Ham-
mock*, Chancellor; reversed.

*B. F. Merritt* and *James R. Yerger,* for appellant.

*J. M. Golden, A. Z. Golden,* and *N. B. Scott,* for
appellee; *J. T. Cheairs, amicus curiae.*

McCULLOCH, C. J.  This litigation involves the ques-
tion of the validity of local fish laws in Chicot County.

The General Assembly of 1919 (Special Acts 1919, p. 177) enacted a statute authorizing the county court of Chicot County or the judge in vacation to issue a license, upon competitive bidding, to some person for the purpose of catching cat fish, gar and buffalo fish by seine in the waters of Lake Chicot, Grand Lake, Macon Lake and Boeuf River. The statute specifies that the seining must be done with a seine not less than three hundred feet long, with meshes not less than four inches; that license granted by the county court or judge shall extend for a period of two years and be let upon a competitive bidding basis after advertisement in a county newspaper; that said bids shall be based upon the percentage of the gross receipts from the sale of fish caught and sold, and that the licensee shall execute a bond conditioned that the licensee shall regularly and promptly make quarterly settlements in payment of the percentage of gross receipts.. It is provided in the statute that the money arising from such license shall be paid into the treasury of the county, "to the credit of such fund as the county judge may determine to reimburse said county for expenses incurred in the proper enforcement of the provisions of this act." And the section containing the above quotation also contains a declaration of the purposes of the act to be, "for the propagation, protection and increasing of the game fish in said waters, the county court of Chicot County shall undertake to procure from proper authority ample supplies of game fish to replace the waters of said county." Section 3 of the statute makes it unlawful for any person to seine or catch any fish otherwise than as authorized by law, and imposes a fine of not less than twenty-five nor more than one hundred dollars, and also a prison sentence of not less than one month nor more than six months in the county jail.

In the case of State v. Adams, 142 Ark. 411, this court construed the statute as one designed to protect game fish in the waters named by providing for the extermination of non-game fish, and upheld the validity of the statute.

The General Assembly of 1921 (Special Acts 1921, p. 94) enacted another special statute amending § 3 of the act of 1919, *supra,* so as to make it unlawful to catch cat fish, gar or buffalo fish or other non-game fish in any of the waters of Chicot County except under license issued pursuant to § 1 of the act of 1919.

The General Assembly of 1923 enacted still another local statute (Special Acts 1923, p. 1057) prohibiting the taking of cat fish, gar, buffalo and other non-game fish in any of the waters of Chicot County other than Macon Lake, Chicot Lake and Grand Lake without a license from the county court, and that court was authorized to grant a license for the purpose. This statute provides that "no license or permit shall be granted except where the licensee agrees to pay to the county, for the benefit of the roads funds thereof, a given percentage of the gross receipts therefrom, and in addition thereto agrees to pay the salary of an inspector to be named and appointed by the county judge or county court; the said inspector shall witness all hauls of said nets or seines, be present at all visits thereto, shall weigh and inspect the fish caught therefrom and make accurate weekly reports thereof to the county court of said county." The last section of this statute contains an express declaration that the act of 1919, *supra,* and the act of 1921, *supra,* "where not in direct conflict herewith, are hereby expressly preserved, and this act shall be cumulative thereto, and the provisions thereof shall cover the subject here treated."

The General Assembly of 1923 enacted still another local statute (Acts 1923, p. 1771) covering Chicot, Desha and Phillips counties, and providing a complete game and fish law for these three counties, with six game commissioners, two from each county, to enforce its provisions. This statute contains a complete scheme for the protection of game and fish and the regulation of taking the same, similar to the general statutes of the State creating the Fish and Game Commission. This statute provides for license fees similar to the general law for

taking game and fish, prescribes open seasons and closed seasons, a daily bag limit and catch, and requires all persons fishing or hunting to pay a license except persons under sixteen years of age. Section 9 of this statute provides that the license fees collected in each county shall be distributed, seventy-five per cent. "for the employment of wardens for the enforcement of this act and other game laws of the State in said counties, and the remaining twenty-five per cent. into the common school fund of the county for apportionment by the proper authorities as other school funds are now apportioned."

Appellees Gravenmier and Yates are residents of Chicot County, engaged in fishing for commercial purposes, and they were arrested by the officers of the county under a charge of seining without a license in waters lying between the levee and the Mississippi River. They instituted this action in the chancery court of Chicot County against the deputy prosecuting attorney of that county, the county judge, the sheriff, the game warden and the justice of the peace before whom the prosecution was pending to restrain those officers from prosecuting them and to have the exactions prescribed under various statutes referred to declared to be illegal. Appellee R. L. Sims is a resident of Drew County and was permitted, without objection, to join in the action for the purpose of attacking the validity of the act of 1923, *supra,* applicable to the three counties mentioned. The chancery court in its final decree declared the statutes to be invalid and restrained the officers from enforcing the same. The court took cognizance of the fact that this court had upheld the act of 1919 in the Adams case, *supra,* but decided that that statute had been rendered invalid by the amendment to § 3 by the act of 1921, *supra.* This conclusion was erroneous for the reason that, if the act of 1921 was invalid, it left the former statute unimpaired. The act of 1919, however, is not involved in the present litigation, for that statute only prohibited the seining of fish in certain waters, namely, Lake Chicot, Grand Lake, Macon Lake and Bœuf River,

and appellees Gravenmier and Yates have not attempted to seine for fish in those bodies of water; their operations have been confined to other waters of Lake Chicot lying in front of the Mississippi River levee. It is argued in the brief for appellees, however, that the invalidity of the act of 1919, *supra*, has been demonstrated since our decision in the Adams case, *supra*, by the fact that the license fees collected under that act have, in later years, reached the sum of more than seven thousand dollars per annum, which is more than sufficient to enforce the provisions of the statute. This affords no reason why the statute should now be declared to be unconstitutional, for, if the statute was valid at the time of its enactment, the fact that the fees collected under it are subsequently found to be excessive would not render it invalid. This is a matter which addresses itself to the Legislature, for, as before stated, if the exactions were apparently not arbitrary at the time of the enactment of the statute, they could not subsequently become so and render the statute invalid. If the enforcement of the statute affords an amount of funds in excess of that which is necessary to enforce the statute, it is within the power of the Legislature to provide for the disposition of those funds.

It is contended that the act of 1921, *supra*, was invalid in extending the provisions of the former statute to all of the waters of Chicot County. The argument is that this act is arbitrary and unreasonable on its face, for the reason that there are numerous bodies of water in Chicot County other than what are termed the major bodies of water mentioned in the act of 1919, and particularly those bodies of water lying in front of the Mississippi River Levee that are the natural habitat of cat fish, gar and buffalo, but that no game fish abound in those waters, and therefore there is no need for exterminating the former in order to protect the latter. This argument might well be addressed to the Legislature, but we think that it is a matter for the determination of the lawmakers, and not the courts, and that they had

the power to pass such a regulation. It is true that the bodies of water in front of the levee are subject to inundation, but this might afford a special reason why the non-game fish should be exterminated, instead of being carried by the high waters of the overflow to other bodies of water where game fish abound. In other words, we think that all these matters were for the consideration of the lawmakers, and we can not say that their action in the matter is arbitrary.

The validity of each of the statutes enacted in 1923, *supra,* is challenged on the ground that they must be characterized as revenue statutes because the first one contains a provision for paying a percentage of the gross receipts into the road fund of Chicot County, and that the last one contains a provision for paying twenty-five per cent. of the gross receipts into the school fund of each of the three counties mentioned in the statute. The first one of these statutes is not, we think, open to the objection that it is a revenue measure. It contains a provision requiring the licensee to pay the expenses of enforcement, and whatever surplus funds are paid under the statute go into the road fund. The primary purpose of the statute, as declared by this court in the Adams case, was to destroy the non-game fish as a protection to the game fish, and if surplus revenue arise in carrying out that scheme, the Legislature had the power to provide for the distribution of the fund, and the fact that a surplus is thus raised does not characterize the scheme as one for the raising of revenue; in other words, the revenue comes in merely as an incident. The last of the statutes of 1923, *supra,* must, however, be characterized as a revenue statute because it expressly provides that all of the funds accruing from license fees must be distributed, partly to the expense fund and partly to the school fund. A definite percentage of the revenues is assigned to the school fund, and this necessarily makes it a revenue measure. But, even if we so view the effect of the statute, does that render it invalid? We think not. Fish and game belong to the State for the benefit of the citizens

thereof, and the privilege of taking fish must be extended equally to all citizens. But the right to take fish and game is a privilege, which may be taxed under the powers delegated to counties and other subordinate governmental agencies of the State. Constitution of 1874, art. 2, § 23; *Little Rock* v. *Prather,* 46 Ark. 471; *Pine Bluff Transfer Co.* v. *Nichol,* 140 Ark. 320; *Davies* v. *Hot Springs,* 141 Ark. 521. The power to delegate conferred by the Constitution authorizes the Legislature to exercise the delegated power for the benefit of the local political agencies, and the fact that funds arising from the taxation are for the benefit of the locality affected does not render the statute invalid as being discriminatory against citizens of other localities. Taxation for local purposes exercised under the delegated power does not operate as a discrimination against other localities, for the delegation of the power necessarily implies authority to exercise it solely for local benefit. It will be observed that none of these statutes confers any special benefits on citizens of the counties mentioned, and there is no discrimination against non-residents, so far as the right to exercise the privilege on the same terms as they may be exercised by citizens of the locality is concerned. The statutes involved in *Lewis* v. *State,* 110 Ark. 204, and *J. L. C. & E. R. Co.* v. *Adams,* 117 Ark. 54, contained provisions discriminating in favor of local residents and against non-residents of the locality. For that reason in each case the statute was declared invalid; but, as before stated, there is no such provision involved in either of the statutes now under consideration.

It is further contended that the last one of the acts of 1923, *supra,* is discriminatory and void on account of the exemption in favor of persons under sixteen years of age. This, we think, is not an unreasonable exemption or classification. Minors under that age are fit subjects for exemption from such regulatory laws.

We find no grounds for declaring these statutes invalid.

Appellants challenge the jurisdiction of the chancery court, on the ground that it has no power to enjoin criminal prosecution. It is true that the court possesses no such jurisdiction, but it does have jurisdiction to relieve against unlawful exactions. *Cleveland & Co.* v. *Pine Bluff*, 34 Ark. 603; *Dreyfus* v. *Boone*, 88 Ark. 353.

The decree is therefore reversed, and the cause remanded with directions to dismiss the complaint for want of equity.