PEOPLE v. MARTIN et al.

(Supreme Court, Appellate Division, First Department. January 10, 1908.)

1. GAME—STATUTORY PROVISIONS—UNLAWFUL POSSESSION—PENALTIES.

Article 2 of the forest, fish, and game law (Laws 1900, p. 22, c. 20) is entitled "Birds," and embraces sections 20–39 inclusive. Section 22, as amended by Laws 1904, p. 1401, c. 578, makes the close season for quail from December 1st to October 31st, both inclusive. Section 25, as amended by Laws 1902, p. 879, c. 317, makes the close season for grouse from December 1st to September 15th, both inclusive. Section 30, as amended by Laws 1904, p. 1413, c. 588, provides that plover shall not be taken or possessed from January 1st to August 15th, both inclusive. Section 28, as amended by Laws 1902, p. 880, c. 317, provides that grouse and quail shall not be sold or possessed during the close season, except in December, and possession or sale thereof during December shall be

presumptive evidence that they were unlawfully taken by the possessor. Laws 1900, p. 29, c. 20, § 39, provides that a person violating any provision of the article is guilty of a misdemeanor, etc. In an action by the people for the prescribed penalties for unlawfully possessing certain quail, grouse, and plover, it appeared that on January 1st defendants had in their possession a number of each kind of the birds mentioned. *Held*, that a verdict for plaintiff for the full amount of the statutory penalty was properly directed.

2. SAME—POLICE POWER—IMPORTED GAME.

The fact that the grouse were imported was no defense, since in the exercise of police power the Legislature may make possession of imported game unlawful.

3. SAME—STORING GAME—STATUTORY PROVISIONS—INTENT TO HAVE GAME STORED.

Section 141, Laws 1902, p. 487, c. 194, provides that if there is any open season therefor, any dealer, if he has given the bond provided for, may hold during the close season such part of his stock as he has on hand undisposed of at the opening thereof, but no presumption that the possession of game is lawful shall arise until it affirmatively appears that the provisions of the section have been complied with. One of the defendants testified that he intended to send the game back the next day to the wholesale dealer of whom he bought them that the wholesale dealer might, upon giving the required bond, put them in cold storage. *Held*, that such an intention was no defense and that the burden of showing that the provisions referred to were complied with was on defendants.

Appeal from Trial Term.

Action by the people against John B. Martin and another for penalties for unlawful possession of game birds. From an adverse judgment, and an order denying a new trial, defendants appeal. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Finch & Coleman (John Burlinson Coleman, of counsel), for appellants.

John K. Ward (Robert C. Beatty, of counsel), for respondents.

CLARKE, J. This is an action for penalties for violation of section 28 of the forest, fish, and game law of the state (chapter 20, p. 27 of the Laws of 1900, as amended by chapter 317, p. 879, of the Laws of 1902, and section 30 of said law (as amended by chapter 588, p. 1413, of the Laws of 1904), in unlawfully possessing certain quail, grouse, and plover in the period when such possession is prohibited. At about 2:50 p. m. on January 1, 1907, two game protectors found in the possession of the defendant John B. Martin, at the Café Martin, in the city of New York, 45 grouse, 8 plover, 102 quail, and 14 partridges. All of the birds were picked. Some of them were in the preparing room, near the kitchen fire, where the cooking was done, and the rest were in the ice box. There is no controversy about the possession or the number of birds, or the amount of the judgment, provided the direction of the verdict was proper.

Section 22 of the forest, fish, and game law, as amended by chapter 578, p. 1401, of the Laws of 1904, provides that the close season for quail shall be from December 1st to October 31st, both inclusive. The close season for plover is from January 1st to August 15th, both inclusive. Section 30, as amended by chapter 588, p. 1413, of the Laws

of 1904. The close season for grouse is from December 1st to September 15th, both inclusive. Section 25, as amended by chapter 317 of the Laws of 1902. Section 28, supra, provides as follows:

"Woodcock, grouse and quail not to be possessed.—Woodcock, grouse and quail shall not be sold or possessed during the close season, except in the month of December, and possession or sale thereof during December shall be presumptive evidence that they were unlawfully taken by the possessor."

Section 30, supra, provides:

" * * * Plover shall not be taken or possessed from January 1st to August 15th, both inclusive."

Section 39 of the forest, fish, and game law, in article 2, entitled "Birds," provides that:

"A person who violates any provision of this article is guilty of a misdemeanor and is liable to a penalty of $60 and to an additional penalty of $25 for each bird taken or possessed in violation thereof."

It will thus be seen that the close season for quail and grouse began on the 1st day of December, after which it was unlawful to take such game birds. The Legislature, however, allowed one month in which such birds lawfully taken during the open season could be disposed of, but provided that possession or sale thereof during December should be presumptive evidence that they were unlawfully taken by the possessor. These birds were found in the possession of the defendant on the afternoon of January 1st, in the preparing room of the kitchen of his café, after the expiration of the month allowed for the sale or disposition thereof.

In Geer v. Connecticut, 161 U. S. 519, 16 Sup. Ct. 600, 40 L. Ed. 793, it was held that there is no property in game other than that which the state permits. The taking of it may be absolutely prohibited, or traffic and commerce in it may be absolutely prohibited. It is proper exercise of the police power and within the discretion of the Legislature.

The 45 birds designated as "black grouse" were imported. In People v. Bootman, 180 N. Y. 1, 72 N. E. 505, it was held that the Legislature, in the exercise of the police power, has power to make the possession of imported game unlawful, and that the method of affording protection to game is necessarily within the discretion of the Legislature; that laws passed for this purpose do not interfere with private property, for there is no property in living wild animals, and only as the laws permit their capture is there property in wild animals after they are caught or killed; that the Legislature may provide a close season for the taking of game, and may prohibit the possession or sale of game during that season.

In People ex rel. Hill v. Hesterberg, 184 N. Y. 126, 76 N. E. 1032, 3 L. R. A. (N. S.) 163, it was held that by virtue of the act of Congress passed May 25, 1900 (31 Stat. 187, c. 553, § 2), the so-called Lacey act, that Congress practically said to the citizens: We do not prohibit the importation of foreign game, but subject it to the local laws; and you must see to it at your risk that you do not violate these laws. It was further held that the provisions of the forest, fish, and game law, prohibiting the possession of game coming from without the state

during the close season, is not unconstitutional as a deprivation of property without due process of law and is a proper exercise of the police power of the state.

The appellants seek to extend the period of one month allowed for the possession and sale of these game birds after the expiration of the close season under section 141 of the forest, fish, and game law (Laws 1902, p. 487, c. 194):

"* * * Provided nevertheless that if there be any open season therefor, any dealer therein, if he has given the bond herein provided for, may hold during the close season, such part of his stock as he has on hand undisposed of at the opening of such close season, * * * but no presumption that the possession of fish or game or the flesh of any animal, bird or fish is lawfully possessed under the provisions of this section, shall arise until it affirmatively appears that the provisions thereof have been complied with."

The defendant testified that on the afternoon when the birds were seized he said to the wardens:

"All right; those game go back tomorrow to Mr. Silz, where I bought the game."

The argument of the appellant is in brief that because, after the discovery of the game, the defendant said that it was his intention on the next day to send them back to the wholesale dealer from whom he had bought them, in order that that wholesale dealer, upon giving the bond required by law, might put them in cold storage for preservation until the next season should open and he could lawfully sell them, therefore, defendant's mental intention to send the game to another man, in order that that man might comply with the bonding provision of the law, made defendant's possession lawful and the judgment error. But the section relied upon expressly provides that:

"No presumption that the possession of * * * game * * * is lawfully possessed under the provisions of this section shall arise until it affirmatively appears that the provisions thereof have been complied with."

Not an intention that somebody else may hereafter comply with said provisions, but that it affirmatively appears that the provisions have been complied with. When a person claims the benefit of an exception, the burden is put upon him to show that he comes within its provisions. In the face of the positive provisions of the various sections of the game laws, the contention of the appellants cannot be sustained. If an intention to do an act is equivalent to the doing of it, and sufficient to nullify the express provisions that no presumption shall arise until it affirmatively appears that the provisions of the act have been complied with, no penalties can ever be inflicted. Intent is not made a part of the statute. Mere possession is enough. To allow a mental process to be substituted for the positive requirement of the statute would be to emasculate the necessarily drastic provisions thereof. If the court is to legislate, for how long a period should it extend, by mental process of the offender, the period during which it is lawful to possess game? The law has allowed a reasonable time to get rid of game lawfully killed, to wit, one month, and in the interest of dealers has permitted the bonding and preservation of said game in cold storage thereafter. But so carefully has the Legislature guarded against the violation of the statutes which they have deemed neces-

sary for the preservation of our wild animals, fish, and birds that even the allowance of possession during the month of December is coupled with the requirement that the presumption is that the birds so possessed were unlawfully taken, and at the end of such month it has provided that the privilege to hold in cold storage and under bond depends upon affirmative proof that the necessary bond has been given. To weaken by judicial construction these carefully considered and appropriate provisions of the statute would be to invite violations of this salutary law. We are to interpret the laws, not make them.

It therefore follows that the judgment and order appealed from should be affirmed, with costs to the respondent. All concur.