[No. 8648.]

## THE PEOPLE V. WILLIAMS.

1. GAME—*Statute Construed.* At common law wild game belonged to no one. The title was in whoever could first capture it, which anyone might lawfully do. So, under the statutes preceding the act of 1899 (Rev. Stat. secs. 2739 *et seq.*) No act of the individual in taking game, or having it in possession, was unlawful, unless prohibited by some express provision of the statute; and in prosecutions for a violation of the statutes then existing, the burden was upon the people to prove that whatever was alleged against the accused was prohibited. The act of 1899 (Rev. Stat. c. LVIII), is a

radical change, not only from the substantive law previously existing, but as well, from the procedure for the enforcement of the statute. Except as expressly permitted by the act, no person can now take, or have in possession, any of the wild animals or birds mentioned in the statute. (14, 15.)

Possession of a portion of the carcass of a deer, at a time when there was no open season upon deer, is a violation of the act. (16.)

What is prohibited, and the punishment thereof declared, in Rev. Stat. sec. 2876 is a misdemeanor. (17.)

That the section fails to so declare is unimportant. (17).

2. CRIMINAL LAW—*Information,* for the unlawful having game in possession need not negative the exceptions of the statute. (19.)

3. —— *Evidence—Burden of Proof.* In prosecutions under the game law, proof of possession by the accused of the forbidden thing makes a *prima facie* case; and the accused, claiming the benefit of any exception in the statute, has the burden of proving his claim. The statutory shifting of the burden of proof has not the effect to abrogate the rule of reasonable doubt. (18.)

If upon the whole case a reasonable doubt remains in the minds of the jury they must acquit. (18.)

4. STATUTES—*Prohibiting an Act,* and declaring the penalty, need not declare the grade of the offense. (17).

*Error to Mesa District Court.* Hon. THOMAS J. BLACK, Judge.

Hon. FRED FARRAR, Attorney General, Mr. CLARENCE M. HAWKINS, Assistant Attorney General, Mr. RALPH E. C. KERWIN, Assistant Attorney General, for the People.

Messrs. GRIFFITH, WATSON & SMITH, for defendant in error.

Mr. Justice GARRIGUES delivered the opinion of the court.

1. March 3rd, 1915, an information was filed in the District Court of Mesa County charging that about February 25th, defendant Williams unlawfully and willfully had in his possession a portion of the carcass of a deer, contrary to the provisions of the game and fish laws, and against the statutes of the state regulating the killing of game. The court quashed the information upon the ground that it

charged no offense, and stated no facts constituting an offense, and was in violation of section 25, Art. II of the state Constitution, which provides that no person shall be deprived of life, liberty or property without due process of law. The case is brought here by the People and argued upon five assignments of error, all relating to the act of the trial court in sustaining the motion to quash.

2. The legislature in 1899 passed a very comprehensive law designed for the better protection of game and fish. Its provisions are compiled in the Revised Statutes of 1908, and for convenience we will refer to the sections as they there appear.

"Sec. 2739. All game and fish now or hereafter within this state not held by private ownership, legally acquired, and which for the purposes of this act shall include all the quadrupeds, birds and fish mentioned in this act, are hereby declared to be the property of the state, and no right, title, interest or property therein can be acquired or transferred or possession thereof had or maintained except as herein expressly provided."

"Sec. 2748. The possession at any time of game or fish unaccompanied by a proper and valid license, certificate, permit, or invoice, as herein provided, shall be *prima facie* evidence that such game or fish was unlawfully taken, and is unlawfully held in possession, and it shall be the duty of every person having the possession or control of game or fish to produce the proper license, certificate, permit or invoice, when one is required by this act, on demand of any officer, and to permit the same to be inspected and copied by him."

"Sec. 2753. No person shall at any time of the year, or in any manner, pursue, take, wound or kill any bison, buffalo, elk, deer, antelope, mountain sheep or beaver * * * or sell, offer or expose for sale or have the same in possession, except as permitted by this act. * * * *"

Sec. 2579 as amended by the laws of 1913 closes the open season on deer until 1918.

Sec. 2876, as amended by the laws of 1913, provides:

"Every person using dynamite or other explosive or poisonous or stupefying substance, or pursuing, taking, wounding, killing or having in possession any bison, or buffalo, elk, deer, mountain sheep or antelope in violation of this act, shall be punished by a fine of not less than $100 nor more than $500 or by imprisonment in the county jail not more than six months, or by both such fine and imprisonment."

"Sec. 2877.   Every person or officer violating any of the provisions of this act, otherwise than as contemplated in section 2876 of this division, shall be guilty of a misdemeanor and be punished by a fine of not less than $25.00, nor more than $250.00, or by imprisonment in the county jail not less than ten days or more than three months, or by both such fine and imprisonment."

"Sec. 2879. Prosecutions under this act may be commenced either by indictment, complaint or information, and District and County Courts and justices of the peace in their respective counties shall have concurrent original jurisdiction of all offenses under this act, except those contemplated in section 2876, of which justices of the peace shall not have jurisdiction otherwise than as committing magistrates."

3.   The act of 1899 constitutes a radical change in the game laws as they existed prior thereto.   Under the former statute, as at common law, game belonged to no one.   The ownership was in any person who could capture it, which everyone had the right to do, and no act of the individual in taking or possessing game was illegal, unless prohibited by some statute.   In most prosecutions for violating these prohibitive statutes, the burden was upon the People to prove that the act was done in some manner prohibited, and any-

body having the right, except as prohibited, it imposed upon the People the burden of making negative allegations which had to be proved as laid in the information. The act of 1899 is a complete change in the law, as well as the procedure for its enforcement. It places the ownership of all game in the State, and prohibits and makes unlawful any traffic therein, or the possession thereof by the individual, except as expressly permitted. Except as permitted by the act, no person can now, at any time, nor in any manner pursue, take, wound or kill any game or have the same in his possession. Instead of having the right to take game, except as prohibited, the individual now has no right to do so except as permitted. This is the construction placed upon the act of 1899 by our Court of Appeals in *Hornbeke v. White*, 20 Colo. App. 13, where at pages 24 and 25, 76 Pac. 929, 930, it is said:

"The statutes of Colorado and other states vesting the ownership of game in the state as a 'proprietor,' take away from the people the right, to capture and kill the game unless *prohibited*, leaving under these statutes no right, except as *permitted*. Otherwise expressed, in the absence of statute vesting the ownership in the state, the game was, like the water of the streams, open to the first appropriator, except as *prohibited* by law, while under statutes vesting the ownership in the state, the game is like the land and timber of the state, it can be appropriated to use or held in possession only as *permitted* by law.

It therefore follows that, under the facts of this case, plaintiff's right to the possession of the deer hides could not be established by showing that possession thereof was not *prohibited* by law, but it was incumbent upon him to point out some provisions of law which permitted him to have possession, and that a failure upon his part to allege and prove facts which would entitle him to possession under the law would defeat his recovery." This opinion was followed by the Supreme Court in *People v. Johnson*, 38 Colo. 78. Not-

withstanding these were civil causes, the ownership of the state in and the right of the individual to the possession of game, were determined.

4.   The offense charged, if any, is having in possession a portion of a carcass of a deer in violation of section 2876, and the first question involved is whether this section defines, and the information based thereon charges, an offense, that is, does the having in possession itself constitute an offense; and second, does section 2876 merely fix a penalty, or does it create a distinct offense as well as provide a penalty?   As before stated, the legislature abolished the previous prohibitory statutes; placed the ownership of all game in the state, and made it unlawful for the individual to take, or have game in his possession, except as permitted.   This information charges possession in 1915 when there was no open season on deer, consequently the possession was in violation of the act, and unlawful unless permitted.   We have therefore reached the conclusion that defendant's possession of a portion of a carcass of a deer, unexplained, was itself a violation of the act.   The following authorities are in point and tend to support this conclusion:   *Smith v. State,* 155 Ind. 611, 58 N. E. 1044, 51 L. R. A. 404; *People v. Martin,* 123 App. Div. 335, 107 N. Y. Supp. 1076; *State v. Pulos,* 64 Or. 92, 129 Pac. 128; *People v. Bootman,* 40 Misc. Rep. 27, 81 N. Y. Supp. 195; *State v. Farrell,* 23 Mo. App. 176; *Javins v. U. S.,* 11 App. Cas. (D. C.) 345; *Phelps v. Racey,* 60 N. Y. 10, 19 Am. Rep. 140; *Magner v. People,* 97 Ill. 320; *People v. Waldorf Co.,* 118 App. Div. 723, 103 N. Y. Supp. 434; *Ex parte Maier,* 103 Cal. 476, 37 Pac. 402, 42 Am. St. Rep. 129; *State v. Rodman,* 58 Minn. 393, 59 N. W. 1098; *State v. Stone,* 20 R. I. 559, 40 Atl. 499.

5.   Section 2876 provides that every person pursuing, taking, wounding, killing or having in his possession any deer in violation of the act, shall be punished by a fine of not less than $100 nor more than $500, or by imprisonment

in the county jail not more than six months or by both such fine and imprisonment. This section, and section 2877, define the only offenses, and provide the only penalties for violations of the game laws. While it is true section 2876 does not say: Whoever violates the act shall be deemed guilty of a misdemeanor, nevertheless it does provide that any person violating the provisions of the section shall be punished by fine or imprisonment in the county jail or by both. This defines and constitutes a misdemeanor which is an offense against the public punishable by fine, or imprisonment in the county jail, or both, as distinguished from a felony. In *People v. Godding*, 55 Colo. 579, it is held not necessary that an act creating an offense shall itself specify that the crime charged is either a felony or a misdemeanor. In that case the statute simply provided the offense should be punishable either by fine or imprisonment in the penitentiary, and we held that such a statute charges a felony. By analogy from what was said in the *Godding* case, section 2876 charges a misdemeanor, and because the statute does not say in so many words that it is a misdemeanor makes no difference. We are therefore of the opinion that section 2876 creates and defines an offense and fixes a penalty therefor. As tending to support this conclusion, section 2879 provides that for all offenses committed under section 2876, justices of the peace shall only act as committing magistrates, whereas they are given concurrent original jurisdiction with the District and County Courts to try all offenses committed under section 2877.

6. The complaint alleges defendant unlawfully had deer meat in his possession in violation of the act. This stated a good cause of action. It was not necessary in the information to negative the exceptions in the statute permitting possession in certain designated cases. By proving possession in the defendant the people would establish a *prima facie* case and if he claims his possession was lawful

by reason of some exception in the statute, the burden is upon him to sustain his claim. When defendant admits the act, the burden is upon him to show affirmatively that he comes within the exception permitting possession. This is true both as a rule of pleading and evidence, and it could not be met by a motion to quash. Casting upon defendant the burden of proving an affirmative defense in no way abrogates the rule of reasonable doubt. What we wish to impress is, if the people's evidence establishes possession, which the defendant admits, and claims it was lawful because coming within some exception, the burden will rest upon him to prove his plea of confession and avoidance, and if upon the whole case the evidence on the trial raises a reasonable doubt in the mind of the jury as to defendant's guilt, they must give him the benefit of the doubt and acquit. The following cases are in point: *Liggett v. People,* 26 Colo. 364-368, 58 Pac. 144; *Johnson v. People,* 33 Colo. 224-230, 80 Pac. 133, 108 Am. St. Rep. 85; *Smith v. People,* 51 Colo. 270-277, 117 Pac. 612, 36 L. R. A. (N. S.) 158; *People v. Martin,* 123 App. Div. 335, 107 N. Y. Supp. 1076-1079; *People v. Bootman,* 40 Misc. Rep. 27, 81 N. Y. Supp. 195; *State v. Stone,* 20 R. I. 559, 40 Atl. 499; *De Graff v. State,* 2 Okl. Cr. 519, 103 Pac. 538. In the *Liggett* case, defendant was charged with selling liquor unlawfully without a license. The court held, the sale being proven, the burden was upon the defendant to show, as a matter of defense, that he had a legal license permitting him to sell liquor. The case of *Johnson v. People, supra,* is a very carefully considered one, in which many authorities are reviewed. Defendant was charged with violating a statute which provides:

"* * * Every person who shall administer, or cause to be administered, or taken, any such poison, substance or liquid, or who shall use, or cause to be used, any instrument of whatsoever kind, with the intention to procure the miscarriage of any woman then being with child, shall be im-

prisoned * * * unless it appear that such miscarriage was procured or attempted by or under advice of a physician or surgeon with intent to save the life of such woman or to prevent serious and permanent bodily injury to her." The indictment did not negative these exceptions. The court held that neither as a rule of pleading or evidence was it necessary for the People to negative the exceptions; that the exceptions contained in the statute were matters of defense which must be made to appear by evidence brought forward by the defendant on the trial, and this rule was later adopted and followed in *Fitch v. People,* 45 Colo. 298. In *Smith v. People, supra,* defendant was charged with practicing medicine unlawfully without having a license, where the statute made certain exceptions; held, unnecessary for the people to negative the exceptions. In *People v. Martin, supra,* the New York court was confronted with the question of whether mere possession was an offense, and said:

"When a person claims the benefit of an exception, the burden is put upon him to show that he comes within its provisions."

In *People v. Bootman, supra,* the New York court was considering a complaint which charged the possession of game during the forbidden season, in which the court says:

"The possession of the birds at the forbidden season within the state is *prima facie* evidence that the possessor has violated the law, and the burden is then cast upon him of proving facts to show that the possession is legal, and this is as true as a rule of pleading as it is concededly true as a rule of evidence."

The matter of pleading exceptions received very careful consideration by the Oklahoma Court in *De Graff v. State, supra,* where it is held that a negative averment to the matter of an exception or proviso in a penal statute is not necessary in an information, unless the proviso or exception enters into and becomes a material part in the description of the offense.

The case is reversed and remanded with directions to the lower court to overrule the motion to quash and require defendant to plead to the merits of the action.

*Reversed and remanded with directions.*

Decision *en banc.*

Mr. JUSTICE TELLER dissents.

The construction put upon the game law by the majority opinion is so contrary to my views of it that it seems proper to state the grounds of my dissent.

The principal ground of the decision seems to be that the statute under consideration effected a radical change in the situation; that, whereas at common law, it is said, game belonged to no one, by this act the state became the owner of all the game within its borders. Hence, we must abandon the old procedure in criminal cases, and hold anyone having game in his possession, out of season, *prima facie* a violator. of the law.

It is unnecessary to determine the correctness of the conclusion from the premises stated, because it is not true that the statute made such a radical change in the law. At common law the sovereign owned the game of the country, in his own right, prior to Magna Carta, and after that as trustee for the people. In this country the ownership of game was in the colonial governments before the revolution, and since that time it has been in the several states. *State v. Mallory,* 73 Ark. 236; *Geer v. Conn.,* 161 U. S. 519. This ownership is in the people collectively, "in their united sovereignty;" and the act of 1899 did no more than regulate the manner and time of the taking and using by individuals of that which the state holds for the benefit of all. It affords no reason for changing the rules of criminal procedure.

The majority opinion proceeds upon the theory that section 2876 R. S. 1908, as amended in 1913, defines an of-

fense and fixes the penalty; hence, it is said, the information, being in the language of the section, is sufficient.

I am unable to accept the construction which the court thus puts upon this section, the meaning of which to my mind is clear. It merely provides that the commission of any of the acts named *in violation of the act,* of which that section is a part, shall subject the offender to the penalty therein prescribed. The next section mentions no acts which constitute an offense, but prescribes penalties for the violation of provisions of the act, other than those contemplated in the preceding section, and provides lighter penalties for them.

Sections 2876 and 2877 were clearly intended to make certain offenses, elsewhere in the act defined, punishable in one way, and others in another way. It was, therefore, necessary to specify what acts, *when done in violation of the law,* were to form one of these classes, all others falling in the second class.

If but one grade of punishment had been deemed sufficient it would have been unnecessary to name any of the acts mentioned in section 2876, but it would just as much define the offenses as it does now.

The amendment of section 2876 in 1913 increased the first class by making the *illegal* taking or possession of deer, mountain sheep, or antelope, subject to the severer penalties, otherwise the section is unchanged; and it is to be noted that the compilers of the Revised Statutes of 1908 subheaded this section in accordance with this contention, as follows: "Penalty for dynamiting fish or killing buffalo." It is a part of a division which is entitled "Penalties,—Prosecutions,—Fines."

This view of the statute is confirmed by the fact that elsewhere in it is prescribed what constitutes an offense as to every one of the matters enumerated in section 2786. See sections 2758, 2761, 2763, 2793, 2794, 2795, 2796, 2811, and 2815.

In view of this fact it is impossible to accept the statement in the majority opinion that sections 2876 and 2877 "define the only offenses" under this act. The reasoning of the court at this point is not easy to follow. It says: "While it is true that section 2876 does not say: 'Whoever violates the act shall be deemed guilty of a misdemeanor;' nevertheless, it does provide that any person violating the provisions of the section shall be punished by a fine or imprisonment in the county jail, or both. This defines and constitutes a misdemeanor." etc. Here the court rightly concludes that the penalty fixed makes the offense a misdemeanor, but it fails to point out how that fact defines what shall constitute this particular offense thus made a misdemeanor.

Section 2833 prohibits the hunting or shooting of protected game without a license, which license, however, is not required for hunting on one's own land.

Section 2749 authorizes the possession of young game when it is necessary to save its life.

Section 2801 provides that the purchaser of game sold on seizure by a game warden, has lawful possession.

Section 2809 makes it lawful to receive and hold game for storage when the prescribed invoice is attached.

The controlling fact is that there is no general prohibition of the possession of deer during the closed season.

Were possession an offense, made so by an act of general prohibition, then a charge that one had in his possession any protected game would put him on his defense. Did this act contain such general prohibition, the specific prohibitions in the sections named, and others not mentioned, would be unnecessary, and tautological. The very fact that the legislature prohibited possession in these specified cases, requires us, either to conclude that it was not intended to make mere possession of protected game an offense, or to ignore the rule that law makers are presumed to have used

no language in a statute not deemed necessary to the purpose in view.

This position is further supported by reference to section 2842 which provides that:

"The possession of protected game at any time *in the field*, shall be *prima facie* evidence that the party having such possession is engaged, or has been engaged within the year in hunting the same."

If mere possession of such game in any place is an offense, it was wholly unnecessary to provide that it should be *prima facie* evidence of a violation of the law. The words "in the field," clearly indicate that possession under other circumstances is not of itself evidence of an offense under the game law; as it would be were possession in any place an offense.

This section last quoted is a later enactment than section 2748 quoted in the majority opinion.

It is manifestly intended to enlarge the scope of the last named section, which makes possession "unaccompanied by a proper and valid license, certificate, permit or invoice," *prima facie* evidence that the game or fish was unlawfully taken and held. Under this provision it is not proof of mere possession that makes a *prima facie* case against the accused; but proof of possession *without license, permit, certificate or invoice.*

This section contradicts the conclusion of the court that possession being proved, the accused is put upon his defense.

The later section—2842—makes possession sufficient to make a *prima facie* case, *if it is in the field;* a distinction for which the reason is obvious.

The information is insufficient under the rules recognized by this court. In *Johnson v. The People*, 33 Colo. at page 231, 80 Pac. 135, 108 Am. St. 85, it is said:

"In *State v. Miller*, 24 Conn. 527, it was held that it is immaterial whether the proviso or exception be contained in

the enacting or subsequent clause, if only it follows a general prohibition; but if there be no general prohibition in the description of the offense, then it is only a limited prohibition, and the prosecutor in the latter case must allege the circumstances necessary to show that the thing prohibited has been done."

Section 2786, which is said to define the offense, provides only that an act *in violation of the statute* shall be punished in a way therein prescribed. Why, then, does not the rule above cited apply? Why should not the prosecutor "allege the circumstances necessary to show that the thing prohibited has been done?"

The offense consists of an act done under the circumstances named in some one of the sections which prescribe the conditions under which possession is unlawful. Otherwise no offense has been committed.

The information by its terms concedes as much in that it charges as a crime, not the having of the deer in possession, but having such possession *in violation of the statute*. The section relied upon imposes no penalty for having possession, but for having possession *in violation of the act*. As has already been pointed out a *prima facie* case is not made out, under section 2748, by proof of possession only; and if it is necessary to prove more than possession, it is necessary to charge more in the information. The allegation that the possession was "contrary to the provisions of the statute" states no fact, and is a bare legal conclusion.

In *Lamberton v. The State*, 11 Ohio 282, it was held that an indictment for "unlawfully resisting" an officer "contrary to the provisions of the statute," was bad, as stating, in the latter phrase, a mere legal conclusion.

This being a statutory offense, the information should set out every ingredient required by the statute to constitute it.

"Either the letter or the substance of the statute must

be followed, and nothing is to be left to implication, or intendment, or to conclusion," 22 Cyc. 336.

As has been stated, the statute contains several provisions the violation of any one of which is an offense, and the case, therefore, comes under the rule that:

"Where the statute contains several provisions, the violation of any one of which is an offense, the facts should be so stated in the indictment as to make it apparent which provision is relied on." *Ibid* 324.

The information, in effect, merely asserts that the accused has done that which renders him liable to the penalty prescribed; but does not comply with the rule, as above stated, and disclose upon which one of the several cases to which the penalty section applies the state relies.

The penalty prescribed being for doing something which is in violation of the act, how can it be imposed unless the fact that the thing done was in violation of the act be proved? If it must be proved, it must be alleged.

I have carefully examined the cases cited in the majority opinion and find that in every instance the law under which the case was brought contained a general prohibition against the possession of game during a named period. In a number of cases the actions were for penalties, and in one of the New York cases cited a statute is quoted specially providing that possession alone shall throw upon defendant the burden of bringing himself within any existing exception. In only one of these cases was there presented a question as to the sufficiency of an indictment or information. They are, therefore, wholly inapplicable as authorities. In the single case cited where an information was under consideration, *De Graff v. State*, 2 Okla. Crim. 519, 103 Pac. 538, the court recognizes the rule that where an exception in the statutes "enters into and becomes a material part of the description of the offense" it must be negatived in an information.

It is true that in prosecutions for selling intoxicating liquor without a license it is held sufficient to prove a sale, the possession of license being a matter of defense; but that fact does not meet the fundamental objection in this case. There is but one offense in selling liquor without a license, and a charge of that offense is definite and certain; under the game law there are several possible offenses connected with possession of game, and the defect in this information is that it does not indicate which offense, of which possession of deer is a part, is intended to be charged. The rule as to liquor cases has, therefore, no application here.

The information is wholly insufficient to meet the requirements of the rule recently approved by this court. In *Fehringer v. People,* 59 Colo. 3, 147 Pac. 361, we said:

"Clearly, in every information or indictment charging a criminal offense, good pleading requires that sufficient facts be set forth to identify the crime from another infraction of the same law by the same defendant. * * *

In every criminal prosecution the accused possesses the constitutional right—Section 16, Art. 2—'to demand the nature and cause of the accusation,' and it is elementary that in every criminal prosecution the pleading charging the offense must set forth sufficient facts to adequately identify the transaction. * * * We are unable to say that this has been done when the indictment or information fails to set forth any of the particulars essential to constitute the crime."

Suppose the defendant pleads guilty and sentence is pronounced; then suppose a new information, in language the same as this, or similar to it, is filed. Under this ruling such information is good, but how can the court determine the sufficiency of a plea of former conviction under such an information? There is nothing to show of what the second offense charged consists; and it would be necessary to take evidence as to both offenses before the court would be able to rule on the plea.

This is conclusive that the information is bad, and the judgment so holding ought to be affirmed.

I am authorized to state that Mr. Justice Hill and Mr. Justice White concur in this dissent.